J. E. WAKELEY V. STATE OF NEBRASKA.

FILED APRIL 11, 1929. No. 26335.

*O'Sullivan & Southard, Hugh A. Myers* and *Bernard J. Boyle,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lester C. Dibble, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

EBERLY, J.

An information was filed against the plaintiff in error, hereinafter referred to as defendant, in the district court for Douglas county, charging defendant in three distinct counts with: (1) Forging a certain draft of $4,700; (2) forging an indorsement "L. H. Gibson" on the back of said draft; (3) with uttering and publishing said forged draft and forged indorsement thereon.

Trial resulted in a verdict of guilty as to the three charges contained in the information, followed by a sentence as provided by law. From this conviction the defendant prosecutes error, making numerous assignments which will be discussed for convenience under four heads: (1) Errors alleged to have been committed by the district court in refusal of application for continuance; (2) in re-

fusal of tendered charge to jury on subject of character; (3) refusal to permit cross-examination on the subject of fees received or to be received by certain expert on handwriting testifying in said cause; (4) refusal of court to give certain instructions tendered on the subject of circumstantial evidence.

At a proper time the defendant presented an application for continuance of this trial based upon his then physical condition. This application was supported by affidavit from his physician, but was denied by the trial court. In this we find no error.

Application for continuance, based on the mental and physical condition of the defendant at the time of the application therefor, is addressed largely to the discretion of the trial court. This must necessarily be so, for that court has the defendant before it in person and can, to some extent, judge from his personal appearances whether his physical condition is such as to enable him to stand the ordeal of trial. But this means, which the trial court has, in determining the defendant's physical condition, cannot be preserved in the record except in an imperfect way. *Goddard v. State,* 78 Ark. 226; *State v. Lee,* 58 S. Car. 335. In view of a record considered as an entirety in this case, we, as a reviewing court, are not enabled to say that error was committed by the trial court in denying the continuance applied for.

The defendant presents exceptions to instruction No. 11 given by the court on its own motion and also complains of the refusal of the district court to give instruction No. 1 requested by the defendant upon the same subject. The instruction complained of as given by the court was:

"The defendant has introduced evidence tending to show his reputation as an honest, law-abiding and truthful citizen. If his good character as an honest, law-abiding and truthful citizen is proved to your satisfaction, then such fact should be considered by you in connection with all the other facts in the case; and if after a consideration of all the evidence in the case, including that bearing upon the

good character of the defendant, the jury entertain a reasonable doubt as to the defendant's guilt, it is your duty to acquit him, but if the evidence convinces you beyond a reasonable doubt of defendant's guilt, you must so find, notwithstanding his good character."

This instruction appears to be in accord with the previous decision of this court. *Lillie v. State,* 72 Neb. 228; *Sweet v. State,* 75 Neb. 263.

" 'The trial of criminal cases is by a jury of the country, and not by the court. The jurors, and they alone, are to judge of the facts, and weigh the evidence. The law has established this tribunal because it is believed that, from its numbers, the mode of their selection, and the fact the jurors come from all classes of society, they are better calculated to judge motives, weigh probabilities, and take what may be called a common sense view of a set of circumstances, involving both act and intent, than any single man, however pure, wise and eminent he may be. This is the theory of the law; and as applied to criminal accusations, it is eminently wise, and favorable alike to liberty and to justice. But to give it full effect, the jury must be left to weigh the evidence and to examine the alleged motives by their own tests.' The whole matter is for the jury to determine. The question being discussed is whether the matter was properly left to the jury." *Lillie v. State,* 72 Neb. 228, 243.

It may be conceded that the propositions contained in the requested instructions are true and that good character has, and ought to have, great weight. The other evidence in the case may be sufficient to convict a person of bad character when it would be wholly insufficient if good character were shown, but the same is true of other substantive matters of defense. Must the court single out each substantive fact in the evidence that tends to establish innocence, and tell the jury that, if a consideration of all other evidence would require a verdict of guilty, they must still consider whether the particular fact pointed out would not be sufficient to raise a reasonable doubt? The attention

of the jury, in the instant case, was directly called to the character of the defendant by the court. And they were told that evidence of good character was to be considered with all of the other evidence in the case and to be given such weight as the jury may deem it entitled to. This was done in the instruction quoted. *Lillie v. State*, 72 Neb. 228, 243. And the refusal of the district court to give the instruction requested was therefore not erroneous.

Error is predicated upon refusal of the court to allow Wallace O. Shane, expert handwriting witness for the state, to be cross-examined as to his fees for his expert testimony. This matter has been fully determined in the case of *Fetty v. State, ante*, p. 169. In the opinion of the court by Goss, C. J., we find the following language which is a discussion of a similar assignment of error:

"We think the court should have allowed this question to be answered by the witness for what effect it would have, if any, on the jury, and to allow the jury to know his pecuniary interest in the case and to weigh his credibility as to his other testimony in the light of that influence. * * * In *Olive v. State*, 11 Neb. 1, Judge Lake held that the court erred in refusing to allow a witness on cross-examination to be examined as to his interest in a damage suit brought by survivors of the deceased whose murder was the subject of the case on trial. In *Blenkiron v. State*, 40 Neb. 11, it was held: 'In the cross-examination of a witness it is competent to interrogate him in regard to any interest, pecuniary or otherwise, and the extent of such interest he may have in the result of the case in which he is testifying, as affecting his credibility.' 40 Cyc. 2671, citing numerous cases, that: 'A witness may be interrogated as to payments to him by one of the parties, in excess of his legal fees, or offers or promises of such payment.' The testimony of Mr. Shane was a very material element in connecting the defendant with the handwriting in the letter set out in the information. The jury should not have been prevented from knowing what fees and expenses he was to receive. The answer may not have

affected them at all in favor of defendant, but that is not a matter upon which the trial court, or we as a reviewing court, have a right to speculate. In excluding the evidence we think the court erred."

Appellant also assigns as error the refusal of the court to give instruction No. 8 requested by the defendant. This instruction, it may be said, was the usual cautionary instruction, proper and required to be given in criminal cases when the evidence relied upon for conviction is wholly circumstantial. By its terms it is limited in its application to "the evidence relied upon by the state in this case in proof of the first two counts of the information."

The state in effect concedes the instruction requested to be correct as an abstract proposition, but contends that evidence in the record in support of the second count given by an expert on handwriting, though based solely on the results of comparison made by him between certain writings of the defendant established as genuine and the questioned document, is to be deemed "positive and direct," as distinguished from "circumstantial." The language of the state's brief on this point is:

"As to the first count—the forgery of the draft—the jury had to draw one inference, that defendant, himself, raised the draft. As to the second count—the forgery of the name of L. H. Gibson—the jury had to draw no inference; the proof as to this was positive and direct. Defendant's instruction number 8, a proper instruction on circumstantial evidence, covered both counts; it was thus part good, but was part bad, and was properly refused."

The decisive question presented here is, therefore: Is the evidence of an expert on handwriting derived wholly from "comparison of hands" direct or circumstantial evidence?

Whatever may be the established rule elsewhere as to "comparison of hands" or, in the older phrase, "similitude of hands," in Nebraska by statute the evidence respecting handwriting may be given by comparisons made by ex-

perts, or by jury, with writing of the same person which is proved to be genuine. Comp. St. 1922, sec. 8854.

In this connection it is to be remembered that—"Under the denomination either of *circumstantial* or of *direct,* every thing to which the denomination of evidence is applicable stands included. * * * In every case, therefore, of circumstantial evidence, there are always at least two facts to be considered: (1) The *factum probandum,* or say, the *principal* fact—the fact the existence of which is supposed or proposed to be proved, the fact evidenced to—the fact which is the subject of proof; (2) the *factum probans,* the evidentiary fact—the fact from the existence of which that of the *factum probandum* is inferred." 3 Bentham, Judicial Evidence, p. 2.

"Thus, the characteristics of indirect or circumstantial evidence, as distinguished from that which is direct, are, first, the existence and presentation of one or more facts of the class described as *evidentiary;* and, secondly, a process of *special inference,* by which these facts are so connected with the fact sought, as to tend to produce a persuasion of its truth. Hence, it has been very significantly called in Scotch jurisprudence, *argumentative* evidence." Burrill, Circumstantial Evidence, p. 5.

"Indirect evidence, however, is more commonly termed, in practice, *circumstantial* and *presumptive,* both words being sometimes used indifferently, to express the same idea. Strictly, the former is the more general term, and includes the latter as its species. * * * All presumptive evidence is circumstantial, but all circumstantial evidence is not presumptive." Burrill, Circumstantial Evidence, p. 7.

It is obvious, therefore, where proof is confined to questioned documents which a person is charged with forging, which are submitted to a jury with writings of the same person proved to be genuine, as the sole basis of comparison, but without expert testimony, such jury by a process of inference must determine the actual connection between the facts thus proved and the fact or facts sought to be

established. In other words, what is placed before them is no more than the evidentiary facts from the existence of which the *"factum probandum"* must be determined. The conclusion follows that evidence so considered is not "direct evidence," but is properly designated as "circumstantial evidence."

This conclusion is in effect supported by the instruction of the district court approved by this court in *Morgan v. State,* 51 Neb. 672. The approved instruction in that case contained the following language:

"Evidence is either direct and positive or presumptive and circumstantial. Evidence is direct and positive when the very facts in dispute are communicated by those who have had actual knowledge of them by means of their senses and where therefore the jury may be supposed to perceive the fact through the organs of the witnesses. It is presumptive or circumstantial, where the evidence is not direct, but where, on the contrary, a fact which is not directly and positively known is presumed or inferred from one or more other facts or circumstances which are known."

But are we justified in considering the evidence of an expert in handwriting of a higher degree when the basis of the conclusion he states is solely the writings, which, when submitted directly to the jury, are properly designated by the term "circumstantial evidence?" Would it be logical to say that, if the individual jurors who constituted this trial jury, after this evidence had been submitted to them as circumstantial evidence, had been properly instructed in the science professed by handwriting experts until they had each attained the qualifications of an expert on that subject, this fact would have resulted in a change in the nature of what had theretofore been submitted to them as "circumstantial evidence" to "direct evidence?" In other words, the true foundation of the testimony of an expert in handwriting is simply to make the jury see with their own eyes what he says is in the handwriting concerning which he testifies. He is, in fact

and in truth, merely a trained observer who points out, explains and evaluates for the purpose of identification the characteristics of the handwriting submitted to him, so that the jurors may fully understand and give due consideration to this evidence thus adduced. It would seem that a stream cannot rise higher than its source, and that as the basis of his evidence, and the foundation of his testimony, is wholly "circumstantial evidence," notwithstanding this expert may point out the peculiar characteristics existing in the same, which might otherwise pass unnoticed, and so explain them that the jury may feel justified in accepting his conclusions, yet the original evidence, the actual writings offered as proof, including his conclusions derived therefrom, must be, and ever remain, in the nature of "circumstantial evidence."

It is to be noted, however, that the question here determined relates solely to the "nature of the evidence." It may be conceded that the determination of a jury based upon circumstantial evidence made under proper instruction may be sustained even as against direct evidence. That, however, is determined, not by the nature of the evidence, but by the weight of the evidence. Such, indeed, were the questions before this court in *In re Estate of O'Connor*, 101 Neb. 617, and 105 Neb. 88, and the determination there made on the subject of the weight and sufficiency of the evidence is in no manner in conflict with the determination here made as to the inherent nature of the testimony of the expert on handwriting in this record.

We have not overlooked the other assignments of error as made by the defendant; however, their separate consideration would unduly extend this opinion.

Because of the refusal of the district court to give instructions tendered on the subject of "circumstantial evidence," and its refusal to permit cross-examination on the subject of fees received or to be received by certain experts in handwriting testifying on the trial of said cause, the judgment is reversed and the cause remanded for further proceedings in harmony with this opinion.

REVERSED.