BETTY BERG, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

61 N. W. 2d 837

Filed January 8, 1954. No. 33448.

*John F. McCarthy*, for plaintiff in error.

*Clarence S. Beck*, Attorney General, and *Dean G. Kratz*, for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

By information it was charged that defendant had in her possession a forged bank check for the payment of money; that she knew that it was a forged check; and that she uttered it as true and genuine with intent to damage and defraud. She plead not guilty, was tried to a jury, and found guilty. Motion for a new trial was filed and overruled. Sentence was pronounced. She

brings the matter here by petition in error. We reverse the judgment of the trial court and remand the cause with directions to dismiss.

The date of the check was March 27, 1953. The complaint before the justice of the peace was filed April 6, 1953. The preliminary hearing was held April 9, 1953. Information was filed April 13, 1953, and trial had April 16, 1953.

The State offered the evidence of a merchant in Grand Island that the defendant presented the check to him; that when presented it bore only the name of John Finck as drawer; that he filled in the name of the payee as "cash" for the amount of $100, and the date; that he required the defendant to endorse the check; and that he delivered merchandise to the defendant and cash for the difference.

Thereafter he compared the signature with the signature of John Finck on two other checks which he had, concluded that "something that didn't look right to me," and deposited the check.

The State next called the cashier of the bank on which the check was drawn. He testified that the check was received from a correspondent bank in Grand Island; that when it was received at the bank several of the officers and employees checked the signature with the signature card of John Finck; that a conference was had with John Finck and his son; and that as a result John Finck signed a "stop-payment" request for the reason "Signature is questioned"; and that the check was returned unpaid to the correspondent bank. He further testified that in his opinion the signature was not that of John Finck. This witness was asked if John Finck ever authorized anybody to sign a check for him. He answered no—"Not to my knowledge."

The State then offered certain signatures of John Finck and called an expert witness who testified that, in his opinion, the signature on the check here involved was a forgery.

The State rested. Defendant moved for a dismissal on the ground that the State had failed to prove the crime charged. The trial court overruled the motion. This is assigned as an error here.

The defendant then called John Finck as her witness. He testified that he had an account in the bank on which the check was drawn; that he had given the defendant three checks signed by him with the amount not written in; and that the check here involved was one of those checks.

On cross-examination Mr. Finck was asked about statements he had made to others about this check and the signature. He testified that he had told the banker, his son, a lawyer not involved in the trial, and the prosecuting attorney that he thought the signature was not his; and that he had dictated such a statement to a reporter, but at those times he did not have his glasses, and "when I used my glasses I knowed it was my signature." He further testified that he had given the defendant the privilege of signing his name to a check but that this check was not one signed by her. The defendant then moved for a dismissal because of the failure of the State to prove a case based on Mr. Finck's testimony that it was his signature on the check.

The defendant then testified that Mr. Finck had signed the check here involved and two others in her presence; that this one was given as a loan; and that she gave Mr. Finck a note for it. Defendant's landlady testified that Mr. Finck had signed and delivered a check to her for defendant's rent about March 27, 1953.

The first question presented is whether or not the State introduced evidence sufficient to take this case to a jury and sustain the verdict of defendant's guilt.

The rule is: In a prosecution for uttering a forged instrument knowing it to be forged, a conviction cannot be sustained without proof of the forgery. Majors v. State, 109 Neb. 316, 190 N. W. 1020.

The State's burden here was, in part, to prove that

the signature on the disputed check was a forgery. The State offered circumstantial evidence that the signature here was not that of John Finck. See Wakeley v. State, 118 Neb. 346, 225 N. W. 42. Assuming but not deciding that the evidence was sufficient, if believed as to that question, the State then had the further burden of proving that the signature of Mr. Finck was made without his authority.

The rule is that to sustain a conviction for forgery it is not sufficient to show that the signature is not that of the party whose name is used, but it must also affirmatively be shown that the signing was made without his authority. Taylor v. State, 114 Neb. 257, 207 N. W. 207; Lunsford v. State, 124 Neb. 529, 247 N. W. 37; Sutherlin v. State, 136 Neb. 809, 287 N. W. 614.

The only evidence in this record that we find as to lack of authority is that of the cashier of the bank who testified that so far as his knowledge went Mr. Finck had never authorized anyone to sign checks for him. Obviously the knowledge of the cashier of the bank does not prove lack of authority by Mr. Finck. See People v. Maioli, 135 Cal. App. 205, 26 P. 2d 871, for a case factually largely comparable to the instant case. It relies in part upon the decision in People v. Lundin, 117 Cal. 124, 48 P. 1024, a case which we relied upon in Taylor v. State, *supra.* It states in essence our rule with reference to the necessity for proof of a signing without authority.

The trial court should have sustained defendant's motion to dismiss at the close of the State's evidence.

This conclusion makes unnecessary a statement of the evidence on cross-examination of the defendant as to previous offenses and a ruling thereon. Likewise, other assigned errors need not be determined.

The judgment of the district court is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH DIRECTIONS.