TOM J. CRAWFORD, WHOSE REAL AND TRUE NAME IS THOMAS J. CRAWFORD, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

82 N. W. 2d 1

Filed April 5, 1957. No. 34158.

Robert L. Morrissey and Otto H. Wellensiek, for plaintiff in error.

232

Clarence S. Beck, Attorney General, and *Gerald S. Vitamvas*, for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

An information filed in the district court for Otoe County charged in substance that on March 12, 1956, in Otoe County, defendant, Thomas J. Crawford, having in his possession and custody a certain forged bank check, well knowing that it was forged, did knowingly, falsely, and feloniously utter and publish same as true and genuine with intent to prejudice, damage, and defraud. Defendant, while represented by counsel, was tried to a jury upon his plea of not guilty. His motions to dismiss the information and direct a verdict of not guilty, made at conclusion of the State's evidence and again at conclusion of all the evidence on the ground that the State had failed to meet the burden of proof and prove beyond a reasonable doubt the charge alleged in the information, were overruled and the jury found defendant guilty as charged. Defendant's motion for new trial was overruled and sentence was pronounced. Thereafter he timely filed in this court his petition in error and transcript. Insofar as important here, defendant assigned that the trial court erred in overruling his motion to dismiss the information and for directed verdict made at the conclusion of the State's evidence. We sustain the assignment.

We have established that to utter and publish a forged instrument is to offer to pass it to another with intent to prejudice, damage, or defraud, declaring or asserting directly or indirectly by words or actions that it is good. Robeen v. State, 144 Neb. 910, 15 N. W. 2d 69.

We have also well established that in a prosecution for uttering and publishing a forged instrument, knowing it to be forged, a conviction cannot be sustained without proof of the forgery. Further, to sustain a

conviction for forgery it is not sufficient for the State
to show that the signature is not that of the party whose
name is used, but it must also affirmatively be shown
that the signing was made without his authority. Berg
v. State, 157 Neb. 863, 61 N. W. 2d 837. Such rules are
applicable and controlling here.

Evidence adduced by the State was substantially as
follows: That on March 12, 1956, about 2:30 or 3 p. m.,
defendant came into the Otoe County National Bank.
A lady teller who had never seen defendant before
motioned or requested him to come to the bank teller
window where she was employed. Defendant then
came over to her window and presented the check in-
volved. Thereupon she "asked him if he wanted cash"
and he said "Yes." She did not ask him his name and
there was no other conversation by any one with de-
fendant. She then took the check to another teller's
window, but he knew nothing about it, so she took it
over to another teller's window and asked him if he
knew about it. That teller took the check in his hands,
looked up, and defendant waved at him. He had been a
teller in that bank 5 years, was somewhat familiar with
the genuine signature of the drawer of the check in-
volved, having accepted for payment checks written by
her several times on previous occasions. His opinion
was that the signature of the drawer on the check was
not her genuine signature. During and after showing
the check to the other two tellers, defendant just re-
mained standing there in the lobby and the lady teller
took the check and went back to the bookkeeping de-
partment for several moments. When she returned to
her window, defendant had left the bank without having
been paid any money on the check. She had been a
teller and bookkeeper for 7 years in that bank and had
been familiar with the genuine signature of the drawer
all of that time. Her opinion was that the signature of
the drawer on the check was not her genuine signature.

The sheriff of Otoe County testified as a witness for

the State that defendant had been in the county jail from April 2, 1956, and was still there at the time of his trial on September 9 and 10, 1956. The sheriff knew defendant's son, whose name was Eugene Crawford, and who used the initials "E. J." Crawford. The sheriff testified in substance that on May 14, 1956, when he took defendant's lunch up to him in the jail, defendant wanted the sheriff to call his daughter who lived at Plattsmouth and have some money sent down. He also said that he and his son came to Nebraska City and parked east of the bank or east of a drug store around the corner; that his son gave him the check involved and told him to go to the bank and get it cashed; that he did so to help his son who needed the money, and when the girl went to check up on it he left the check there and told a man teller that he had to go and check the meter on his truck. He then went back out to the car and they left Nebraska City. No evidence was adduced by the State that defendant ever wrote any part of the check.

The person whose name appeared upon the check as drawer testified substantially as follows while a witness for the State: That on February 20, 1956, a man named J. E. Crawford came to her home in Nebraska City wanting to inspect her house for termites; that she permitted him to enter the basement for that purpose; and that he reported to her that there were termites and he would treat her house for termites if she would let him do it right away. He did such work and she paid him therefor. She did not see defendant on March 12, 1956, but on that date about 2 p. m., J. E. Crawford returned to her home and wanted her name, so she wrote her name and address on a piece of paper and gave it to him. Calling her attention to exhibit No. 1, the check involved, which had been received in evidence, the witness was asked and answered as follows: "Q * * * Did you give this check to anyone? A No, not that I know of. Q And did you write that check? A No, I did not.

Q And is it your signature? A No, it is not." In that connection, she was not asked and did not testify that her signature was made without authority, and there is no evidence whatever, either direct or circumstantial, in this record affirmatively showing that the signature on the check was made without her authority. Also, the trial court gave no instruction whatever to the jury upon that necessary element.

In the light of rules heretofore set forth, we may assume, without deciding, that the evidence was sufficient if believed that the signature on the check was not that of the drawer, but that is not sufficient in the absence of any affirmative showing that the signing was made without authority. Authorities relied upon by the State are entirely distinguishable upon the facts and law.

We conclude that the trial court should have sustained defendant's motion to dismiss, and directed a verdict for defendant at the conclusion of the State's evidence. Contrary to the State's contention, such conclusion makes it unnecessary for us to consider any evidence adduced in defendant's behalf, or to determine any other assigned errors.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is reversed and the cause is remanded with directions to dismiss.

REVERSED AND REMANDED WITH DIRECTIONS.