**UNITED STATES of America**
**v.**
**Dr. Alexander V. SPAETH.**
**Cr. No. 20988.**

United States District Court
N. D. Ohio, E. D.
June 14, 1957.

Edwin F. Woodle, Cleveland, Ohio, Geo. R. Hewes, Toledo, Ohio, for plaintiff.

Sumner Canary, U. S. Atty., James Carroll, James Sennett, Jr., Asst. U. S. Attys., Cleveland, Ohio, for defendant.

WEICK, District Judge.

The defendant has been tried and convicted three times of the crime of perjury.

The two previous convictions were reversed by the Court of Appeals for errors of law occurring at the trials. Spaeth v. United States, 6 Cir., 218 F 2d

361; Spaeth v. United States, 6 Cir., 232 F.2d 776, 777.

Defendant has now filed a motion for judgment of acquittal and in the alternative for a new trial to obtain relief from his third conviction.

The principal ground urged in support of the motion is that the evidence at the third trial was insufficient to support the verdict of the jury. The defendant asserts that there was no proof of any intent or motive on his part to commit a crime, and that he was convicted on circumstantial evidence alone.

The prosecution grows out of the case of United States v. Julius Anthony Petro and Joseph John Sanzo, Criminal Case No. 20810 of this Court in which Petro and Sanzo were charged with robbery of a bank in Warren, Ohio with a sawed-off shotgun and revolver and relieving the bank of $71,000 in cash.

The robbery took place in broad daylight on August 14, 1952 at about 10:00 o'clock in the morning.

At the trial of the Petro-Sanzo case, Dr. Alexander V. Spaeth, a practicing physician of Cleveland, Ohio was subpoenaed as a defense witness on behalf of Sanzo, who was his patient, and was required to bring with him his "office records, files, documents and memoranda showing your treatment of Joseph J. Sanzo beginning with August 12, 1952 to the present time, said records also to indicate treatment furnished and the number of visits made by patient to your office from August 12, 1952 to the present time."

The obvious purpose of Sanzo in subpoenaing Dr. Spaeth and his records was to establish the alibi that at the time of the bank robbery in Warren, Ohio, on August 14, 1952 at 10:00 o'clock a. m., he, Sanzo, was then being treated by Dr. Spaeth for a skin rash on his hand in the doctor's office in Cleveland, approximately 50 miles away from the scene of the robbery.

Dr. Spaeth was sworn as a witness at the Petro-Sanzo trial and testified that he first met and treated Sanzo at his office in Cleveland on August 12, 1952.

He testified from his medication record card (Gov't Ex. 31) that he next saw Sanzo at his office on August 14, 1952 and he fixed the hour at 10:00 o'clock a. m. from an entry appearing in his appointment book (Gov't Ex. 36). This was the exact time of the occurrence of the robbery in Warren with which his patient Sanzo was charged.

The medication card indicated on its face that the "4" of the stamped "August 14, 1952" was handwritten quite heavily in ink.

On cross-examination Dr. Spaeth testified as follows:

"Q. You have got August 12. You have got August 14. A. That's right.

"Q. I want you to look at the record and indicate to the Court and jury,—in addition to the stamped date somebody has written over the stamped date on that particular day? A. They have.

"Q. Do you know what date was stamped over before that was written there? A. It was the 14th.

"Q. How do you know that? A. It was put in by myself at the time of the visit. That happens often, the stamp is incomplete or fades, and I write over it.

"Q. When did you do that? A. At the time of the visit.

The gist of the charge in the perjury indictment was that Dr. Spaeth testified under oath that the stamped date on the medication card was August 14, 1952 when he knew that the date stamped thereon was August 18, 1952.

Joseph Tholl, a handwriting expert and George Mesnig, a special agent of the Federal Bureau of Investigation, testified in behalf of the Government that they examined the medication card under microscope and took many photographs of it using ultra violet and infra red rays for some of them; that there was a stamped "8" on the medication

card underneath the inked "4"; that the stamped "8" was then written over by hand with an inked "8"; that a heavily inked "4" was then written over the "8"; that the inked "8" was of the same composition as the ink on the rest of the card; that the heavily inked "4" was of a different composition; that the difference in the composition of inks was clearly apparent by looking at the card with an infra red lamp.

They also identified the photographs which were received in evidence showing a rounded figure underneath the inked "4" which the jury might properly have concluded was an "8".

Defendant claims that the testimony of the witnesses Tholl and Mesnig was circumstantial evidence citing Wakeley v. State, 118 Neb. 346, 225 N.W. 42, 45.

In the Wakeley case the evidence of the handwriting expert was derived wholly from a "comparison of hands." In other words, he drew an inference from admitted facts or circumstances.

In the case at bar, the evidence of the experts was far different. They examined the disputed area on the medication card under microscope and took photographs, even using ultra violet and infra red rays. They made enlargements of the photographs. Their examination was scientific. The evidence they offered was substantive in character.

In Keeney v. De La Gardee, 212 Iowa 45, 235 N.W. 745, the court said:

"By microscopic inspection, and by magnified photographs and sometimes by chemical tests, the expert may be able to discover and to demonstrate the existence of facts which negative the genuineness of the signature. Such facts, when proved, become substantive evidence, rather than mere expert opinion." 235 N.W. at page 749. Cf. Boyd v. Gosser, 78 Fla. 64, 82 So. 758, 6 A.L.R. 500.

In Spaeth v. United States, 6 Cir., 218 F.2d 361, 365, Judge Stewart characterized the evidence of the witnesses Tholl and Mesnig as follows:

"The expert witnesses in this case did substantially no more than testify what physical fact their more practiced eyes observed. As a trained musician may more readily distinguish a minute differentiation of pitch, so the jury would have been warranted in believing that these experts were able to see subtle differences of intensity. Their testimony as to their observation was therefore not circumstantial, and its credibility and weight were for the jury."

■ The medication card showed under date of August 12 that the patient Sanzo was to return for further treatment in six days, which would be August 18th. The card shows no treatment on the 18th although the doctor's appointment book contained an entry that he had an appointment with Sanzo at 3:00 o'clock p. m. on that day, treated him and made a charge of $6 therefor. The Government claims that the alleged treatment shown on the card on August 14th actually took place on the 18th when Sanzo was supposed to return for treatment; that the date August 18, 1952 had originally been stamped on the card and thus corresponded with the appointment book entry until the doctor changed the date on the medication card to the 14th. By making the change, the medication card shows the treatment on the 14th and no treatment on the 18th although the appointment book shows that Sanzo received treatment on the 18th.

The medication card and the appointment book record constituted "documentary or written testimony springing from" the defendant. United States v. Wood, 1840, 14 Pet. 430, 39 U.S. 430, 10 L.Ed. 527; Spaeth v. United States, 6 Cir., 218 F.2d 361, 363.

There was no way to read the mind of Dr. Spaeth to determine his intent at the time he inked in the "4" by hand on

the medication card or when he testified in the Petro-Sanzo trial concerning which he was convicted of perjury.

■ His intent necessarily had to be determined from his acts in the light of all the facts and circumstances of the case. He was presumed by law to have intended the natural and probable consequences of his acts.

Whether or not the defendant had a wilful intent to commit perjury was solely a question of fact to be determined by the jury, under proper instructions, from all the evidence in the case, together with the inferences which might reasonably be drawn therefrom. Defendant concedes that the jury was correctly charged on the subject of intent. No objection was taken to the Court's charge prior to the submission of the case to the jury. See Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A.; United States v. Cioffi, 2 Cir., 242 F.2d 473.

■ In order to convict the defendant of perjury the Government was required to prove, beyond a reasonable doubt, that defendant wilfully and contrary to his oath stated any material matter which he did not believe to be true. Title 18 U.S.C.A. § 1621.

The defendant, of course, knew that he was subpoenaed to bring his records of treatment of his patient Sanzo, who was charged with the commission of a crime. The subpoena mentioned the date of the first treatment, August 12, 1952, and required the doctor to furnish information concerning his treatment and the number of visits.

■ On his direct examination in the Petro-Sanzo case, Dr. Spaeth was questioned concerning the dates of treatment. He was cross-examined extensively concerning dates and his attention was specifically called to the date of August 14, 1952, the stamped date and the inked "4". He was sent to his office by the Court to secure his appointment book which he had testified showed 10:00 o'clock a. m. as the hour of the August 14th visit. He testified further on direct and cross-examination after he had procured his appointment book.

To say that Dr. Spaeth did not know why he was called as a defense witness sounds incredible.

Defendant cites Wigmore on Evidence 3rd Ed., Vol. 2, § 242 on the subject of intent. In the footnote appearing on page 39 the author quotes Reed, J. on State v. Teeter, 69 Iowa 717, 718, 27 N.W. 485 as follows:

"It often occurs in human experience that the mere fact that a particular act has been done affords the best evidence of the motive or intention with which it was done. If one was to break and enter a building which was known to be on fire, the reasonable presumption from his act would be that his intention was either to attempt the extinguishment of the fire or the rescue of the property or persons within it. So if one was to be found in the night time in the act of breaking into a building in which money or property of great value was deposited, his act would give very strong evidence indeed of the motive or purpose which prompted it."

The Court of Appeals held that the evidence in the first trial was sufficient to support the verdict. Judge Stewart said [218 F.2d 363]:

"It is next argued that there was insufficient evidence to support the verdict, in that the stringent degree of proof which is necessary to establish perjury was not met. The rule is that the falsity cannot be proved by circumstantial evidence alone nor by the uncorroborated testimony of one witness. Weiler v. United States, 1945, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495; Hammer v. United States, 1926, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118; Radomsky v. United States, 9 Cir., 1950, 180 F.2d 781; Allen v. United States, 4 Cir., 1912, 194 F. 664, 39

L.R.A.,N.S., 385. The proof in this case contained neither defect. The questioned writing itself, as revealed by the photographs, was directly, and not circumstantially, probative of the falsity of appellant's oath, and since this was in essence 'documentary or written testimony springing from' the appellant, there was no failure to meet the required standards of proof. United States v. Wood, 1840, 14 Pet. 430, 39 U.S. 430, 10 L.Ed. 527."

It is not believed that the evidence at the third trial was substantially different from the evidence at the first trial.

■ Motive is not a necessary element of the crime of perjury. 70 C.J.S. Perjury § 18, p. 476.

■■ Proof of motive does not establish guilt, nor want of proof of motive establish innocence. If the guilt of the defendant be shown beyond a reasonable doubt, it is immaterial what the motive for the crime, or whether any motive be shown, but the presence or absence of motive is a circumstance which the jury may consider as bearing upon the intent of the defendant. Radio Officers' Union of Commercial Telegraphers Union, A.F.L. v. National Labor Relations Board, 347 U.S. 17, 44, 45, 74 S.Ct. 323, 98 L.Ed. 455; United States v. Schneiderman, D.C., 106 F.Supp. 906; Fabian v. State, 97 Ohio St. 184, 119 N.E. 410. The jury was so instructed.

■ It is next contended that the Court erred in not admitting in evidence a number of other medication cards of the doctor of different dates and involving patients other than Sanzo.

What the doctor did or failed to do with respect to the medication cards of other patients was not relevant to the issues here. The issue here is what the doctor did to Sanzo's medication card. The evidence did not disclose the circumstances under which entries were made on the other cards. The admission of other cards in evidence would have resulted in a trial of issues with respect to each card, introduced collateral matters, complicated the issues, prolonged the trial and confused the jury. Under the circumstances, even if the cards of other patients had been relevant (which they were not here) the Court would have been fully justified, in the exercise of its discretion, in not admitting them in evidence. 1 Wigmore on Evidence § 29a.

■ Defendant further claims that the medication card (Gov't Ex. 31) was unlawfully seized by the Government during the Petro-Sanzo trial and that his constitutional rights were violated.

The contention grows out of the fact that at the Petro-Sanzo trial Dr. Spaeth, on direct examination, was testifying from his records and on cross-examination the Government had his medication card marked Government's Exhibit 31 and it was received in evidence. On the same day a Government agent obtained the exhibit from the Clerk, took it to Washington where it was examined and photographed by a special agent of the Federal Bureau of Investigation who immediately returned it to the Clerk. The special agent testified at the Petro-Sanzo trial as to the results of his examination.

It would have been better practice for the Government to have obtained an order of court authorizing the removal of the exhibit for the purpose of examination. Such an order would have been granted by the court as a matter of course. The failure to apply for and obtain the order did not make the previously admitted exhibit any the less admissible nor would it furnish a defense for perjury if committed at the trial.

The exhibit was not in the possession of the defendant when the Government received it from the Clerk. He had relinquished the possession of it when it was marked as an exhibit and received in evidence. While complaint might have been made by the Court concerning

the removal of the exhibit, no prejudice resulted to this defendant. Cf. Johnson v. United States, 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919; Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048.

The point was previously raised without success in Sanzo v. United States, 6 Cir., 210 F.2d 49.

 Finally, it is contended that a new trial should be granted on the ground of newly discovered evidence.

This so-called newly discovered evidence relates solely to impeaching the witness Estelle Bulkley who was called by the Government. The witness had testified about a collateral matter, namely, the doctor's receipt books.

One of the impeaching affidavits is from the defendant himself. It states facts concerning which the defendant had knowledge and could have testified at the trial, but he chose not to take the witness stand. He was, of course, not required to become a witness in his own behalf and was privileged to stand on his constitutional rights. He ought not to complain, however, concerning his failure to offer impeaching evidence when he had full opportunity to do so.

Certainly, there is not sufficient showing that this evidence could not with reasonable diligence have been discovered and produced at the trial. Nor does it appear that such impeaching evidence would have affected the result of the trial had it been offered.

It is too late after verdict to impeach a witness by affidavit where the defendant had full opportunity to present the evidence at the trial had he taken the witness stand.

The note from Dr. Vrooman S. Higby to Dr. Spaeth advising the latter of the unreliability of the witness Bulkley is dated April 25, 1953 which was almost four years before the present trial. Certainly, Dr. Spaeth knew all about her unreliability at the time of the trial, but he remained silent until after the verdict.

In any event, a new trial ought not to be granted on the ground of newly discovered evidence of an impeaching character which tends merely to affect the weight or credibility of the evidence. State v. Petro, 148 Ohio St. 505, 76 N.E.2d 370; Grant County Deposit Bank v. Greene, 6 Cir., 200 F.2d 835.

The motion of defendant for judgment of acquittal and in the alternative for a new trial is overruled.