STATE OF NEBRASKA, APPELLEE, v. TAYLOR BLACK BEAR, APPELLANT.

193 N. W. 2d 563

Filed January 14, 1972. No. 38058.

Albert T. Reddish, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

A jury found that Taylor Black Bear had uttered a forged check in violation of section 28-601, R. R. S. 1943. On appeal he asserts insufficiency of evidence, error in a jury instruction, and excessiveness of sentence.

The check, exhibit 1, and another check, exhibit 2, were forged by Foster Yellow Elk. On Monday, October 5, 1970, Marguerite Crouse, a checkout cashier at the Food Center in Alliance, cashed exhibit 2. The next day a male Indian presented exhibit 1 to Cora Pauley, also a checkout cashier there. She led the man back to John J. Essay, operator of the Food Center. Essay refused to cash the check which he retained, and he accused the Indian of the transaction the previous day. After departure of the Indian, Essay reported the matter to the police department, and police officers subsequently arrested Black Bear.

Neither checkout cashier could identify the offender.

Roger Roebuck, a bread salesman, had witnessed the transaction on Monday. He positively identified Black Bear, who had been intoxicated. Black Bear had been wearing exhibit 3, a "Viet Nam" jacket with the name "Spotted War Bonnet" lettered on the right front. Roebuck on two other occasions during this period saw Black Bear clad in the jacket. In Roebuck's opinion jackets of that type were not uncommon but he had not seen one exactly like exhibit 3.

Essay testified as follows: Black Bear was the Indian he had confronted on Tuesday. He identified him principally by the jacket. Black Bear had been intoxicated to excess. With bloodshot eyes, he had been staggering and weaving. When Black Bear departed, Essay trailed him half a block, then returned to the store and telephoned the police.

Ten to 15 minutes prior to receiving Essay's report, police officers Lyle L. Grant and Byron Fowler on patrol observed Black Bear, Yellow Elk, and two other Indians in a group a few blocks southeast of the Food Center. Black Bear was the only one who was sober. He said he intended to purchase groceries at the Food Center, walking away in that direction.

Essay described to police officers a man 6 feet tall, intoxicated, and clad in an army-type jacket with the words "Spotted War Bonnet, Viet Nam, Da Nang" lettered on it. After an interval of 15 minutes officers arrested Black Bear. He was sitting calmly in the window well at the front of a hotel that was in the process of demolition. The arresting officers were convinced of his sobriety. He was wearing exhibit 3, the only jacket of that type that either officer had seen in Alliance.

Black Bear, 5 feet 7 or 8 inches tall, testified as follows: He had not known the location of the Food Center. He had not seen either check prior to the arrest. On Tuesday, October 6, he had not been north of the hotel, the Food Center being located in that direction. No tes-

timony implied that someone had borrowed his jacket either day.

There were many other conflicts in the testimony of witnesses, not only among witnesses but also by an individual witness. The conflicts related to Essay's report to the police, purchases of merchandise by the offender each day, description of the jacket, and description of the physical appearance of Black Bear's face.

' Evidence is sufficient to sustain a verdict of guilty in a criminal prosecution only when the jury could properly find guilt beyond a reasonable doubt. State v. Leary, 185 Neb. 76, 173 N. W. 2d 520 (1970). Sufficiency of the evidence against Black Bear is 'a close issue. We resolve it against him.

The definition of "utter" in jury instruction No. 13 tracked our language in Crawford v. State, 164 Neb. 231, 82 N. W. 2d 1 (1957). Although instruction No. 13 did not refer to knowledge as such, in instruction No. 8 the statement of issues read in part: "That at that time the defendant knew said check to be falsely made forged and counterfeited."

Jury instructions must be considered collectively. If as a whole they correctly state the law, no error occurs, although one alone may be incomplete. State v. Davis, 186 Neb. 457, 183 N. W. 2d 753 (1971). Black Bear's complaint respecting the instructions is without merit.

The argument over the sentence is connected with the sentence imposed on Foster Yellow Elk. The court sentenced Black Bear to imprisonment for an indeterminate term of 1 to 4 years, and Yellow Elk, 6 to 18 months.

Yellow Elk had pleaded guilty, and the court stated that it considered the plea in sentencing him. Age 42, he had a record of three prior felony convictions, but the third one had occurred 14 years earlier. Black Bear, age 26, had a record of twenty misdemeanor convictions and four prior felony convictions. His fourth felony conviction had occurred approximately 4 years earlier.

It is proper for the court to grant charge and sentence

concessions to defendants who plead guilty when the interest of the public in the effective administration of criminal justice would be served. A.B.A. Standards Relating to Pleas of Guilty, § 1.8, p. 8 (App. Dr., 1968).

Unless an abuse of discretion appears on a claim of excessiveness, we will not disturb a sentence within statutory limits. State v. Morosin, *ante* p. 521, 192 N. W. 2d 165. We have reviewed the presentence reports on Yellow Elk and Black Bear. The latter's sentence fell within the discretion of the trial court.

The judgment is affirmed.

AFFIRMED.

CLINTON, J., dissenting.

I respectfully dissent. In my judgment the evidence identifying the defendant as the utterer of the forged instrument is wholly insufficient to establish such identity beyond a reasonable doubt. This identification depends completely upon the testimony of John J. Essay. Neither cashier could identify the defendant as the man who attempted to pass the check. Essay identified only an Indian wearing a Vietnam jacket, who *was very intoxicated. His eyes were bloodshot. He was weaving and staggering. The officers who arrested the defendant within 5 to 15 minutes of the incident testified positively that the defendant was sober.*

This case does not present a question of mere credibility of the witnesses for the jury to decide. It is so inherently contradictory that the contradiction can be resolved only by speculation. We refer especially to the testimony as to the sobriety of the utterer and the defendant who was arrested. Where speculation and not reasonable inference must be resorted to there is no identification beyond a reasonable doubt.

McCOWN, J., joins in this dissent.