[Crim. No. 141. Second Appellate District.—December 17, 1909.]

## THE PEOPLE, Respondent, v. GERTRUDE DRIGGS, Appellant.

·CRIMINAL LAW—FORGERY OF LEASE—UTTERING AND PUBLISHING BY RECORD — PLEADING — DUPLICITY — SURPLUSAGE. — An information charging the forgery of a lease, and the uttering and publishing, and passing the same as true and genuine, by offering the same for record, charges but one offense under section 470 of the Penal Code, and contains no substantive averment of the offense defined in section 115 of the Penal Code, of procuring any forged instrument to be recorded, which, if genuine, might be recorded, etc., and the mere description of the manner of uttering and publishing the forged lease is evidentiary, and should be disregarded as surplusage.

·ID.—EVIDENCE OF RECORD.—In the absence of a direct averment that the forged lease was procured or offered for record, proof that it was offered for record would constitute evidence of its alleged utterance and publication.

·ID.—ABSENCE OF DEMURRER—WAIVER OF OBJECTION TO INFORMATION.— In the absence of a demurrer, any objection to the evidentiary matter in the information must be deemed to have been waived.

ID.—EVIDENCE—HEARSAY—DECLARATIONS OF DECEASED OWNER OF LAND. Declarations of the deceased owner of the land in whose name the lease was forged, made outside of the presence of the defendant, and constituting no part of the *res gestae,* and which were prejudicial to the defendant, were inadmissible hearsay calling for a reversal.

ID.—OBJECTIONS AND EXCEPTIONS NOT REQUIRED TO BE REPEATED.— Where numerous objections were interposed to such hearsay evidence, and exceptions taken thereto, they were not required to be continually repeated to similar evidence, and the objections and exceptions taken entitled the defendant to a review of each and all of like rulings.

ID.—MENTAL STATE OF DECEASED TOWARD DEFENDANT IMMATERIAL.—
The mental state of the deceased toward the defendant was irrelevant to the guilt or innocence of the defendant.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. George R. Davis, Judge.

The facts are stated in the opinion of the court.

Paul W. Schenck, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

SHAW, J.—Appeal from judgment of conviction and an order denying defendant's motion for a new trial.

By information filed by the district attorney the defendant was charged with the crime of forgery, it being averred that she forged the name of one John J. Charnock to an instrument which purported, in consideration of "past kindness and tender care bestowed upon him by the said Gertrude Driggs," to lease to her for a term of years certain real estate therein described.

Appellant attacks the information, claiming that it is defective in that it charges her with the commission of two offenses, namely, that of forgery as defined in section 470, Penal Code, and also that defined in section 115, Penal Code, which provides that "every person who knowingly procures or offers any false or forged instrument to be filed, registered or recorded in any public office within this state, which instrument, if genuine, might be filed, or registered, or recorded under any law of this state, or of the United States, is guilty of felony."

The information, in appropriate language, charges the defendant with forging the instrument, it being averred therein that "Gertrude Driggs is accused . . . of the crime of forgery committed as follows: That the said Gertrude Driggs . . . did willfully, unlawfully, falsely, fraudulently and feloniously make, alter, forge and counterfeit a certain lease, indenture, writing obligatory, conveyance and contract, which instrument is and was in the following words and figures,

12 Cal. App.—16

to wit," which instrument is set out *in haec verba.* This is followed by the averment which it is claimed states an offense under said section 115, Penal Code, and is as follows: "That afterward, to wit, on or about the twenty-fifth day of March, 1909, Gertrude Driggs, well knowing that the said instrument was false, altered, forged and counterfeited as aforesaid, and with intent to defraud, . . . did willfully, unlawfully, falsely, fraudulently and feloniously, at and in the county and state aforesaid, utter, publish and pass as true and genuine the instrument aforesaid, by offering the said instrument for record at the office of the recorder of the county of Los Angeles, state of California, and did then and there cause the same to be recorded as a record in said office."

The information in form is identical with that considered in the case of *People* v. *Harrold,* 84 Cal. 567, [24 Pac. 106], and it is upon the authority of that case that appellant bases her claim that the information states more than one offense. An examination of the opinion in the Harrold case discloses the only point there decided was that the instrument which was the subject of forgery, even if genuine, was not one entitled to be recorded, and hence it was not a felony to offer it for record, or to cause or procure it to be recorded; and, for this reason, says the court, the instrument leaves but one offense charged, that of forgery. This was a sufficient ground for so deciding, and we cannot accept the opinion as an authority for holding the information defective upon the grounds claimed in the case at bar. Indeed, it was not so held. All that the allegation purports to aver is that defendant uttered, published and passed as true and genuine the alleged forged instrument, and that she did this, not by assigning or transferring it, but in a certain specified manner, namely, by offering it for record, etc. The utterance, publishing and passing of the instrument as true and genuine are acts constituting the offense under section 470. The manner of such utterance and publishing is evidentiary, and should be disregarded as mere surplusage. The averment does not purport to charge the substantive offense defined by said section 115. In the absence of such averment, proof that the instrument was offered for record would constitute evidence of its utterance and publication. (*People* v. *Baker,* 100 Cal. 190, [38 Am. St. Rep. 276, 34 Pac. 649].) In our

judgment, there is no merit in appellant's contention upon this ground. Moreover, such objection to an information is made the ground for demurrer by subdivision 3 of section 1004 of the Penal Code, and when demurrer to the information upon such ground is not interposed, the defendant must be deemed to have waived such objection. (Pen. Code, sec. 1012.) No demurrer was interposed by defendant upon the ground stated, and even conceding the information to be objectionable for the reasons now urged by appellant, she must, nevertheless, be deemed to have waived the point.

The lease and attached certificate of acknowledgment bear date March 3, 1909, and John J. Charnock, whose signature thereto was the subject of the alleged forgery, died about March 23, 1909.

The court, over defendant's objections, admitted the testimony of several witnesses as to declarations and statements made without the presence of defendant by the deceased in his lifetime. Appellant justly contends that the testimony so received under such ruling was of a character prejudicial in the highest degree to her substantial rights. Against appellant's contention respondent insists that, while some of the testimony so received was objectionable, defendant neglected to interpose objections to its reception, and that by reason of such failure defendant waived any objection thereto. While this is the general rule, nevertheless, the law is well settled that where a party has once excepted to the admission of a certain line or character of testimony, his right to a review of such alleged error does not require him to interpose repeated objections to the reception thereof. (*Green* v. *Southern Pac. Co.*, 122 Cal. 563, [55 Pac. 577]; *Sharon* v. *Sharon*, 79 Cal. 633, [22 Pac. 26, 131].) The numerous objections made by defendant to the admission of testimony as to statements made in his lifetime by deceased of and concerning defendant, her efforts to obtain a lease from him, his refusal, etc., all made without her presence, and the rulings of the court thereon and exceptions thereto by defendant, entitle her beyond question to a review of each and all of such rulings.

It is unnecessary to refer to the evidence so received other than in part. Witness Smead, the executor of the will of deceased and in his lifetime his confidential adviser, testified

in substance that prior to February 27th he had a conversation with Charnock relative to his sentiments toward Mrs. Driggs; that from his actions and what he said he knew what his sentiments were toward her; that about the 1st of February he told Mr. Charnock that Mrs. Driggs was apt to have forged papers of some kind against his estate, and that he advised him to protect his heirs by getting out deeds to the people he wanted his property to go to, and that Charnock told him to prepare the deeds, which the witness did; that Charnock signed the deeds and stated, ''Well, this will balk her, the old woman, in anything that she does.'' Witness Haas testified in substance that in the latter part of February or 1st of March he had conversations with Charnock in his lifetime relative to defendant, in which Charnock said that Mrs. Driggs and some attorney wanted him to sign a lease, and he says, ''I wouldn't sign any lease to anyone and didn't sign any papers.'' George Charnock, a brother of the deceased, testified that his brother John told him Mrs. Driggs had been there and was trying to get a lease, and so on. He just made sport of it. He said, ''To think that I would give a lease on land that was already leased and ready to put crops and a man that had been cultivating it for years, and she has no horses or tools of any kind to put a crop in with''; he says, ''I must be a fool, anyone would think of giving a lease to a person under such conditions. . . . Q. What did he say? A. Well, he didn't sign anything, he told me. I understood him. He didn't tell me right out, but I understood that he did not, had not given any lease. He said Mrs. Driggs was an adventuress; that she was nothing more than an adventuress and was not really reliable. He said something more, but I don't feel like saying. He told us then that he had made out a will, and he was fixing things so as to head off the old lady, the old woman, as he called her, in case he passed in his checks; he just spoke that way.'' Witness Stackus testified that deceased said to him that he expected to have some trouble with Mrs. Driggs, and he was deeding most of his property, most of his land, away. I had talked with him about Mrs. Driggs before and he had always spoken of her lowly; he called her, and spoke of her as ''that old thing of a woman, I think is going to get—they are trying to get some of my property.'' He called her a

reprobate. I was there the Sunday before his death and had a conversation with him in which he mentioned Mrs. Driggs. He said that he expected there would be trouble with her, but he thought he had things—business affairs—arranged so that he didn't anticipate any trouble. Witness Reinhart testified: He told me, he says, "she is working a good deal as she worked in the Hill case." He read about the Hill case, and he said to me, "She is working me about the same as she worked old man Hill; I think that is her game of coming to me with soup." Much other testimony of a like character was introduced.

Respondent justifies the rulings of the court in receiving the evidence upon the ground that Charnock and his friends were suspicious of Mrs. Driggs and believed that she had designs on him; that owing to this fact, and for the purpose of "heading off" Mrs. Driggs in any attempt she might make to forge an instrument affecting his property, he deeded the property described in the lease to his daughter. The suspicion and belief of Charnock and his friends might have been wholly groundless. In no event, however, could it constitute evidence tending to show defendant's guilt. Respondent also insists that, inasmuch as the expressed consideration in the lease was "past kindness and tender care bestowed" upon the deceased by the defendant, the evidence was competent for the purpose of showing no such consideration existed, or, if it existed, no value was placed thereon by Charnock. The forgery, however, did not depend upon the sufficiency or insufficiency of the consideration. Testimony on behalf of defendant to the effect that she had bestowed the tender care and performed the kindly acts specified in the lease, and that it constituted full consideration therefor, could in no wise affect her status under the charge of forging the instrument. If improper in the one case, it must likewise be improper in the other.

Respondent also contends "that sufficient testimony of the acts and declarations of deceased concerning defendant appears in the record, without objection having been made thereto, to cure any possible error in the admission of other similar evidence to which proper objection was made"; and for which reason the errors were without prejudice to the substantial rights of defendant. We cannot assent to this;

indeed, the circumstances and facts connected with the alleged forgery are of such a nature that it would be difficult to conceive of evidence more prejudicial in its effect upon the jury. Moreover, as we have seen, the record bristles with objections repeated over and over again to the same line of questions.

The mental state of the deceased toward defendant was wholly irrelevant so far as it affected her guilt or innocence. We are aware of no rule of evidence which would warrant the reception in evidence in this case of the statements and declarations of John J. Charnock, deceased, as they are disclosed by the record. They form no part of the *res gestae* (Code Civ. Proc., sec. 1850), were not authenticated under the solemnity of an oath, nor made in the presence or hearing of defendant, and constituted hearsay pure and simple, if not "vicious and venomous." These views are fully sustained by *People* v. *Landis,* 139 Cal. 426, [73 Pac. 153], the facts of which are identical with those in the case at bar, and *People* v. *Irwin,* 77 Cal. 499, [20 Pac. 56]; *People* v. *Carlton,* 57 Cal. 83, [40 Am. Rep. 112]; *People* v. *Powell,* 87 Cal. 363, [25 Pac. 481]; *Roosa* v. *Boston Loan Co.,* 132 Mass. 439; *Bacon* v. *Charlton,* 7 Cush. 581; *Meeker* v. *Boylan,* 28 N. J. L. 274; *In re Calkins,* 112 Cal. 300, [44 Pac. 577]. We have carefully examined the authorities cited by the people, but the points involved therein bear no analogy to the case at bar.

While our attention has been directed to other alleged errors appearing in the record, the improbability of a recurrence of the same upon a new trial renders it unnecessary that we pass upon them.

The judgment and order denying appellant's motion for a new trial are reversed.

Allen, P. J., and Taggart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 14, 1910, and the following opinion was then rendered thereon:

THE COURT.—Application for a hearing in this court is denied. In denying this application we deem it proper to say that we are not to be understood as approving that

portion of the opinion which is as follows: "The mental state of the deceased toward defendant was wholly irrelevant so far as it affected her guilt or innocence."