## STATE v. MERLE LELAND CLARK.

134 N. W. (2d) 857.

April 9, 1965—No. 39,012.

*Douglas W. Thomson,* for appellant.

*Robert W. Mattson,* Attorney General, *J. Earl Cudd,* Solicitor General, *William B. Randall,* County Attorney, and *Phyllis Gene Jones* and *Bertrand Poritsky,* Assistant County Attorneys, for respondent.

KNUTSON, CHIEF JUSTICE.

Defendant was convicted of the crime of forgery in the second degree and appeals from an order denying a motion for a new trial or, in the alternative, for a judgment of acquittal and from the judgment of conviction.

The evidence establishes that on July 9, 1962, a man representing that he was L. C. Bradford opened a checking account with Commercial State Bank of St. Paul in the name of Northern Supply Company. He signed a signature card under which Bradford was the only one authorized to sign checks drawn on the account. He made a deposit of $50 and ordered some checks for Northern Supply Company, to be mailed to 344 Hamm Building, which he represented to be the office of the company.

The records of the bank reflect the following transactions regarding this account: The initial deposit of $50 on July 9, 1962; a $5 charge for printed checks on July 16, 1962; a garnishment of $45 on July 16; and the presentation of a check for $96.02 on that date. On July 17, checks for $96.05 and $96.23 were presented but were returned on July 18 because of an unauthorized signature and insufficient funds in the account. On July 24, still another check in the sum of $96.45 was returned because the account was closed.

On July 10, 1962, a person representing himself to be Roy or Ray Anderson ordered the use of a telephone number for Northern Supply Company from John Hoffman of the Hoffman Answering Service. This concern renders services for those who retain it in answering telephone calls and matters of that kind. At the trial, Hoffman identified

defendant as the person who represented himself to be Roy or Ray Anderson.

Between 11:30 a. m. and 12 o'clock noon on July 14, 1962, a person representing himself to be Lyle Bradford rented a room from Mrs. Melinda Timmers. He inquired where he could cash a check and exhibited to her a check made out by Northern Supply Company for about $90. She did not remember the exact amount. This individual left the Timmers home, and she never saw him again, but she gave him her telephone number and later received calls asking for him. Attempts to serve a subpoena on a person named Lyle Bradford at that address failed.

On the same day, between 11 and 12 o'clock noon, Mrs. Louise Wickboldt rented a room to a man who said he worked for Northern Supply Company. At the trial, Mrs. Wickboldt said that the man who rented the room from her was defendant. He never appeared again at her home, but she did receive several telephone calls for him after he left.

About 3 p. m. on July 14, 1962, defendant appeared at the Golden Rule Department Store and asked Mrs. Rose Wrobel, a credit interviewer, whether she would "okay" a payroll check for him. It was necessary to procure the approval of Mrs. Wrobel or one of the others in charge before any check in excess of $50 could be cashed by the cashier. She said that she would approve it if it was not too large, whereupon defendant handed her a check drawn on Northern Supply Company, payable to Warren G. Bromberg, in the amount of $96.40, and signed in behalf of Northern Supply Company by Ray or Roy G. Anderson. He also handed her an identification card on which appeared his photograph and a thumb print identifying him as Warren G. Bromberg, an employee of Northern Supply Company. Mrs. Wrobel attempted to verify the firm's existence by looking in various directories but was unable to do so. Defendant then offered to give her a telephone number to call and told her that "if it would be too much trouble, he could take and cash it at a corner grocery store." Being unable to identify the firm, Mrs. Wrobel called the store's security officer, Ralph Drassal, so that he could pass upon the check. Mrs.

Wrobel testified that the above actions took place at the credit office of the store, which is located on the sixth floor. No checks are cashed at that office. Checks are cashed at the cashier's office, which is on the second floor, but approval of the credit department must be procured on checks exceeding $50. There is a large sign on the sixth floor which says, "Checks to be cashed on second floor."

Drassal is a St. Paul policeman who works part time at the Golden Rule store. After being called to the credit department by Mrs. Wrobel, he examined defendant's identification card and the check presented for approval and questioned defendant as to whether he had cashed any similar checks in the city in the past. He then told defendant that he would see what he could do and returned the check to defendant. Defendant accompanied him to the second floor and was asked by Drassal to follow him to the security office, which was next to the cashier's office. Drassal again obtained possession of the check and identification card, and at this point he became suspicious that there was something wrong with the check. In defendant's presence, he called Dayton's store and asked Dayton's security man and a clerk who had cashed a Northern Supply Company check to come to the Golden Rule store and see if they could identify defendant as the one who had cashed the check. Both appeared at the Golden Rule store but were unable to identify defendant. After further questioning, Drassal, in defendant's presence, called the St. Paul Police Department and then waited for Detective Frank Yost to appear. In the meantime, Drassal exhibited to defendant his policeman's badge and searched him for possible weapons but did not then remove anything from defendant's person. Detective Yost was told what had transpired and was given the check and identification card by Drassal. Yost asked defendant his true name. Defendant refused to give it to him. After questioning defendant further, Yost placed him under arrest and searched his person. The search produced two additional Northern Supply Company checks payable to Warren G. Bromberg and signed in the name of Roy or Ray G. Anderson and two identification cards bearing the name Warren G. Bromberg. Yost again asked defendant for his true name and defendant again refused, whereupon Yost called for a squad

car to take defendant to the police station. When that happened, defendant wrote his name on a piece of paper, stating it to be Merle L. Clark.

At the trial, William H. Masson, a part-time employee for the Red Owl store in the Sun Ray Shopping Center, testified that on the same day, July 14, at about 2 to 2:30 in the afternoon, he cashed a check for a man whom he identified as defendant. The check was similar to the other described above except that the amount was $98.14. On the same day, at about 2:15 to 2:30, a check was cashed at the J. C. Penney Company store in the Sun Ray Shopping Center similar to the above checks except for the amount, which was $96.41, and the payee, who was Lyle C. Bradford. Defendant was identified as the person who cashed this check.

The complaint issued against defendant charged him with the crime of uttering a forged instrument. There was no reference to any section of the statute in the complaint. At a preliminary hearing on July 24, 1962, the charge against defendant was stated as arising under Minn. St. 1961, § 620.19, entitled "Uttering." The information filed on July 27, 1962, contains the same averments as the complaint but charges defendant with second-degree forgery and mentions Minn. St. 1961, § 620.10. Upon arraignment on November 2, 1962, defendant demurred to the information. His demurrer was overruled. Immediately before the commencement of the trial, defendant moved to dismiss on the ground that defendant did not know what offense he was charged with. The court's charge to the jury will be discussed hereinafter.

At the preliminary hearing, the evidence presented consisted of Drassal's and Yost's testimony substantially as stated above, together with the two checks Yost found on defendant and the check and identification card he had shown Mrs. Wrobel.

Defendant contends that his conduct does not amount to a violation of the statute but was only preparation for the commission of the crime of uttering; also that there is no evidence that the checks were forged and that, as a result, one of the essential elements of the crime of uttering is lacking. He also contends that his arrest was illegal and that as a result the search of his person was illegal and the checks found on his person are inadmissible; that the evidence at the pre-

liminary hearing was insufficient to give the municipal court jurisdiction to bind him over to the district court; and, finally, that the information charges him with two offenses and that he was unable to know which he was defending against.

After conviction defendant moved for a new trial or, in the alternative, for judgment of acquittal and arrest of judgment. This motion was denied on January 15, 1963, and an appeal therefrom was perfected to this court. Subsequent to the appeal, our decision in State v. Briton, 265 Minn. 326, 121 N. W. (2d) 577, was filed. Thereafter, on defendant's motion, the case was remanded to the district court so that the motion could be considered in the light of the Briton case. When that motion came before the trial court, defendant withdrew his motion for a new trial and requested permission to stand solely on his motion for an acquittal. The court denied the motion for acquittal on March 31, 1964, but no further appeal seems to have been taken from that order so as the matter now stands the appeal is from the order issued on January 15, 1963.

The questions raised by defendant may be summarized as follows: (1) Does the evidence sustain a finding that defendant did "utter, offer, dispose of, or put off" the check upon which the conviction rests? (2) Was the evidence as to whether the check was forged sufficient to sustain his conviction? (3) Was the evidence sufficient to show that the checks introduced to establish a common plan or scheme were forged and, if so, were they admissible as evidence? (4) Was defendant illegally arrested? (5) Was the evidence obtained by a search incident to the arrest admissible? (6) Was the information sufficient to allege the crime of forgery in the second degree of which defendant was convicted? (7) May the sufficiency of the evidence presented at a preliminary hearing be reviewed on appeal following the conviction, and, if so, was the evidence at the preliminary hearing sufficient to justify binding defendant over to the district court for trial?

The statute under which defendant was convicted is Minn. St. 1961, § 620.19,[1] which, as far as material here, reads:

_____

[1]This section has now been repealed and replaced by § 609.625 of our

"Every person who, knowing the same to be forged or altered, and with intent to defraud, shall utter, offer, dispose of, or put off as true, or have in his possession with intent to utter, offer, dispose of, or put off:

\*   \*   \*   \*   \*

"(3)   A forged will, deed, certificate, endorsement, record, instrument, or writing, or other thing, the false making, forging, or altering of which is punishable as forgery—

"Shall be guilty of forgery in the same degree as if he had forged the same."

The information in this case reads as follows:

"I, WILLIAM B. RANDALL, CountyAttorney for said County, hereby inform the Court that on the 14th day of July, in Year 1962, at said County, Merle Leland Clark then and there being, did wrongfully, unlawfully, and feloniously utter, offer and put off as true to and upon one The Golden Rule, a corporation, a certain false and forged writing and order for the payment of money, in the words and figures as follows, to-wit:

" 'NORTHERN SUPPLY COMPANY

Toys for Tots                              1204
344 HAMM BLDG.

22-62

Ca 2-1241            July 13, 1962                              960
ST. PAUL 2, MINN.

PAY TO THE
ORDER OF .....................Warren  G.  Bromberg .....................$96.40
THE SUM \* \* \* 96 DOLS 40 CTS .............................................Dollars
COMMERCIAL
STATE BANK
Fifth Street at St. Peter St. St. Paul 2, Minnesota

Ray G. Anderson'

---

Criminal Code of 1963, but the law in effect when defendant was arrested, tried, and convicted is controlling.

"with the intent then and there had and entertained by him, the said Merle Leland Clark, to cheat and defraud the said The Golden Rule, the said order and writing for the payment of money being then and there false and forged as he, the said Merle Leland Clark, then and there well knew, contrary to the form of the statute in such case made and provided, the same being Section M. S. A. 620.10 said acts constituting Forgery-2nd Degree and against the peace and dignity of the State of Minnesota."

At the outset, it is obvious that the information here, and the action by defendant to attack it, are indistinguishable from the information and procedure in State v. Briton, 265 Minn. 326, 121 N. W. (2d) 577. As a matter of fact, defendant went one step farther in this case than in Briton, in that, in addition to demurring to the information, he moved to dismiss at the opening of the trial. It necessarily follows that if Briton is to stand there is nothing to do but to discharge defendant, in which event the other questions raised would become moot. For that reason, a reconsideration of the Briton case should precede consideration of other questions involved.

Since the Briton case was decided we have had before us four cases involving the sufficiency of informations similar to the one considered in Briton: State ex rel. Masters v. Tahash, 266 Minn. 348, 123 N. W. (2d) 600; State v. Owens, 268 Minn. 321, 129 N. W. (2d) 284; State v. Clark, 268 Minn. 429, 131 N. W. (2d) 204; and State v. Lehn, 270 Minn. 503, 134 N. W. (2d) 329. State ex rel. Masters v. Tahash, *supra*, was a habeas corpus proceeding, and the other cases involved appeals from convictions. In all four of these cases the information, for all practical purposes, was identical to that in Briton, but the objection raised in Briton by demurrer was not presented to the court until after a plea of guilty had been entered.

In the Masters case we said (266 Minn. 350, 123 N. W. [2d] 601):

"* * * The act of forging an instrument is clearly intended to be a distinct and separate crime from the act of uttering a forged instrument, both under present statutes and under the new Minnesota criminal code. Each such act, however, by express statutory language, con-

stitutes the crime of forgery. Where the act of uttering under § 620.19 is alleged, the degree of forgery charged must be ascertained by reference to the sections defining forgery in the various degrees and prescribing the punishment therefor. This reference is necessary because § 620.19 declares that one who violates this section '[s]hall be guilty of forgery in the same degree as if he had forged the same.' It follows that, while uttering a check and forging a check are obviously separate crimes, both acts constitute the crime of forgery in the degree prescribed by provisions dealing with forging an instrument. Thus, the defect in this information is the concluding recital that § 620.10 was violated whereas the act alleged—that of uttering—violates § 620.19; the act of uttering is then properly denoted as constituting the crime of forgery in the second degree."

In holding that the defect in the information was insufficient to invalidate the conviction, we said (266 Minn. 352, 123 N. W. [2d] 603):

"Here we have no claim or indication whatsoever that relator was misled or prejudiced by the erroneous recital that the alleged acts were in violation of § 620.10. On the contrary, defendant at the time of his plea unequivocally advised the court that he knew that he was charged specifically with passing a forged check—not with forging it. Other answers to questions following his plea confirm the existence of that knowledge prior to his admission of guilt. Furthermore, this is not a case where defendant pled guilty to one offense and, because of the existence of a defect in the information, or in the proof as in State v. Wurdemann, 265 Minn. 92, 120 N. W. (2d) 317, was convicted of a different offense, thereby exposing him to a subsequent prosecution for the same offense. The record in this respect is clear. The court viewed the information from the standpoint of the acts charged rather than the statute violated, regarding the acts charged as constituting the crime of forgery in the second degree. Upon this record, the claim that defendant was convicted of anything other than the act of uttering as charged cannot be sustained.

"Although the defect in the information appears on the face of the record, we hold it mere surplusage or an irregularity. As such, the defect is not jurisdictional and the relator, having suffered no prejudice

to any substantial rights, must be deemed to have waived such irregularity by his plea."

In State v. Owens we said (268 Minn. 325, 129 N. W. [2d] 287):

"The offense charged in an indictment is determined by the facts alleged and not necessarily by the name by which it is designated. State v. Snyder, 113 Minn. 244, 129 N. W. 375. We have held that where an indictment charges two offenses, but one inadequately, the latter may be disregarded as surplusage. State v. Henn, 39 Minn. 464, 40 N. W. 564. Here the information tells the defendant in clear and concise language that at a certain time and place he did 'utter and dispose of' a false and forged instrument fully pleaded in the information. The information charges intent to defraud, which is the gist of the offense; states the name of the person to whom the instrument was uttered; and alleges all of the essential elements of the offense of uttering as defined by Minn. St. 1961, § 620.19. The fact that the information concluded with the statement that his act was contrary to the provisions of § 620.10(2), constituting the offense of forgery in the second degree, is deemed not to have misled or prejudiced the defendant in the absence of a timely objection which permits the prosecutor and the court to clarify and correct the information."

In State v. Clark we said (268 Minn. 431, 131 N. W. [2d] 205):

"Citation of a wrong statute in an indictment or information will be treated as mere surplusage when first raised on appeal unless it appears that the defendant was misled or prejudiced. State v. Owens, *supra*. Defendant has been convicted of uttering a forged instrument under Minn. St. 1961, § 620.19, and may not hereafter be tried again under that statute for the offense here involved."

Thus, it appears that in the Masters, Owens, Clark, and Lehn cases we have now held that a mere recital of the wrong statute number in an information is insufficient to invalidate a conviction if the averments of the information are sufficient to apprise the defendant of the crime for which he is being charged and prosecuted. The gist of these holdings, putting it simply, is that defendant has not established prejudice because he has not proved he was misled. This is in conformity with our statute, Minn. St. 628.18, which reads:

"The indictment shall be sufficient if it can be understood therefrom:

"(1) That it is entitled in a court having authority to receive it, though the name of the court is not accurately stated;

"(2). That it was found by a grand jury of the county in which the court was held;

"(3) That the defendant is named, or, if his name cannot be discovered, that he is described by a fictitious name, with the statement that he has refused to discover his real name;

"(4) That the offense was committed at some place within the jurisdiction of the court, except where, as provided by law, the act, though done without the local jurisdiction of the county, is triable therein;

"(5) That the offense was committed at some time prior to the time of finding the indictment;

"(6) That the act or omission charged as the offense is clearly and distinctly set forth, in ordinary and concise language, without repetition;

"(7) That the act or omission charged as the offense is stated with such a degree of certainty as to enable the court to pronounce judgment, upon a conviction, according to the right of the case."

Section 628.19 contains this provision:

"No indictment shall be insufficient, nor shall the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

It is quite impossible to reconcile the holding in Briton with that in Masters, Owens, Clark, and Lehn. The record in the case now before us can lead to no other conclusion than that defendant knew precisely what was the charge against him. The complaint and the order of the municipal court binding him over to district court are free from the objection found in the information. The transcripts of the preliminary hearing and the trial all show that the evidence related to a violation of Minn. St. 1961, § 620.19, not § 620.10. It can hardly be

open to question that defendant's counsel understood the nature of the charge. His requested jury instruction No. 8 reads:

"You, the Jury, are instructed that no inference of guilt is to be drawn from the mere fact that the Defendant has been taken into custody and *charged with a violation of Minnesota Statutes Chapter 620.19.*" (Italics supplied.)

His request No. 17 reads:

"You, the Jury, are instructed that the essential elements of the crime which the Defendant is charged are as follows:

"1.  That the alleged act occurred in Ramsey County

"2.  That the defendant wrongfully, unlawfully, and feloniously

"(a)  uttered

"3.  That the defendant wrongfully, unlawfully, and feloniously

"(b)  offered

"4.  That the defendant wrongfully, unlawfully, and feloniously

"(c)  put off as true,

"5.  A writing as set forth in the information

"6.  Upon the Golden Rule, a corporation

"7.  That the writing was false and forged

"8.  That the defendant knew that the writing was false and forged.

"9.  That the defendant specifically intended to cheat and defraud the Golden Rule.

"You are charged that the burden is upon the prosecuting attorney to establish each and every one of these elements beyond a reasonable doubt and her failure to establish any one of the elements beyond a reasonable doubt requires that you must acquit the Defendant of this charge."

And his request No. 18 is as follows:

"The word utter, as used in my instructions, means to present a false and forged check for payment. [Cases cited.]

"The word offer, as used in my instructions, means to present a false and forged check for acceptance or rejection.

"The words to put off as true, as used in my instructions, means to

present a false and forged check and to declare or assert, directly or indirectly, by words or actions, that it is good."

While the court's instruction to the jury might have been more precise, defendant took exception only to the court's references to conspiracy and, when the instructions are read as a whole, it is clear that the court was charging the jury on the essential elements of Minn. St. 1961, § 620.19, which he told them they must find. It is hard to see how the jury could have been misled. The arguments of counsel likewise indicate that everyone understood that defendant was being prosecuted and tried for a violation of § 620.19.

Thus, in the light of the decisions since Briton, it is not possible to justify a rule which holds that an information which mentions the wrong statute will invalidate a conviction if objection thereto is raised before trial but that the same defect is insufficient to invalidate a conviction if the objection is raised after a plea of guilty. Surely, the defendant here and the defendant in Briton were better informed as to the offense they were charged with in the light of the evidence adduced at their trials than a defendant would be who enters a plea of guilty. It might be argued that a defendant who pleads guilty would be more apt to be misled than one who stands trial. In any event, to place the validity of the conviction on the time when the objection is raised seems too tenuous a rationalization of prejudice to warrant discharging a defendant in one case and holding him in prison in the other.

1. An information is to be construed in the same manner as an indictment.[2] The essential function of either is to apprise the defendant of the charge for which he is being held and tried. If it accomplishes that purpose, we think our statutes, as well as the case law of this state, require that we hold the information sufficient. State v. Mancino, 257 Minn. 580, 102 N. W. (2d) 504; State v. Wurdemann, 265 Minn. 92, 120 N. W. (2d) 317.

2. While we do not lightly modify a decision of such recent origin as Briton, it is better to modify it now, if after reconsideration of the

---

[2]Minn. St. 628.30 provides that "all the provisions of law relating to indictments and for testing the validity thereof, shall apply to informations." .

problem in subsequent cases we are convinced that it goes too far, than to multiply the harm it can do as a precedent by permitting it to stand. The rule is and ought to be that a defect in the information of the kind here present and found in the Briton case does not give rise to a presumption that "defendant is not adequately apprised of the crime with which he is charged and cannot therefore properly prepare his defense." State v. Briton, 265 Minn. 326, 328, 121 N. W. (2d) 577, 579. Unless there is actual proof that defendant has in fact been misled as to the charge brought against him, to his prejudice, it is not ground for invalidating the conviction after a fair trial or a plea of guilty. It is one thing scrupulously to guard the rights of a defendant in a criminal case so that he is sure to have a fair trial, which we think this court has consistently done, and quite another thing to discharge him after a fair trial because of some technical deficiency in the information which did not mislead him or his counsel or in any way prejudice his rights to a fair trial. That is the situation we have here. To the extent that State v. Briton, *supra,* is inconsistent with what we say here it is overruled.

3. While the two statutes, Minn. St. 1961, §§ 620.19 and 620.10, establish separate and distinct offenses, both constitute forgery. We assume that it was due to the fact that § 620.19 states that one who violates its provisions "[s]hall be guilty of forgery in the same degree as if he had forged the same," that the prosecuting officials and the court referred to § 620.10, which defines forgery in the second degree and not uttering. Be that as it may, as long as the averments of the information and the charge of the court to the jury both describe the essential elements of § 620.19, it seems insignificant that § 620.10 was also mentioned.

4. Defendant relies largely on State v. Briton, *supra.* In view of our conclusion that we should no longer adhere to that decision where there is no showing of prejudice, we move on to a consideration of defendant's other contentions that he is entitled to a discharge or a new trial.

First, defendant claims that the evidence fails to show a violation of § 620.19 or even an attempt to commit that crime. It is his con-

tention that all that has been shown is preparation for committing this crime and that preparation is not enough to justify conviction. While we agree that preparation is not sufficient to justify conviction if there are no other overt acts to carry out such preparation, State v. Lowrie, 237 Minn. 240, 54 N. W. (2d) 265, or if there is a withdrawal prior to the commission of the crime, it is noticeable that § 620.19 provides that "[e]very person who, knowing the same to be forged or altered, and with intent to defraud, shall utter, *offer*, dispose of, or put off as true, or have in his possession with intent to utter, offer, dispose of, or put off" such an instrument shall be guilty of forgery. (Italics supplied.) As near as we can fathom defendant's argument, it is that, inasmuch as he had not actually presented the check to the cashier for payment, he had not gone far enough to consummate a crime; in other words, that presentment for approval does not constitute presentment for payment. Under this statute it is sufficient if the check is *offered* with intent to defraud. The most important act under the evidence in this case was the procurement of an approval of the check by the person authorized to approve it. Thereafter, actual cashing of the check followed as a matter of course. In 23 Am. Jur., Forgery, § 5, we find the following:

"* * * [G]enerally, the mere offer of the false instrument with fraudulent intent constitutes an uttering or publishing, the essence of the offense being, as in the case of forgery, the fraudulent intent regardless of its successful consummation; * * *."

In 37 C. J. S., Forgery, § 37a, we find substantially the same rule as follows:

"* * * The offense is complete when a false instrument is offered by one knowing it is forged with representations by word or action that it is genuine, and it is not essential that the instrument be actually accepted as genuine, that it be indorsed, or that anyone be actually prejudiced by it."

State v. Craig, 252 Iowa 290, 106 N. W. (2d) 653, is very much in point. In that case the defendant presented a check to a store manager for his approval. The defendant contended that the mere pres-

entation for approval did not constitute the offense of uttering. The court said (252 Iowa 293, 106 N. W. [2d] 655):

"Here by presenting to Mr. Detty the purported Speas Company check in the sum of $87.15, payable to the order of Thomas Bennett, drawn on the Iowa-Des Moines National Bank, which was shown to be a false instrument, the defendant could be found guilty of uttering and publishing said instrument. It was unnecessary to prove the actual cashing of the O.K.'d check, for it was later found among the check receipts, endorsed by the 'Safeway Stores, Inc.', and was subsequently rejected by the bank as a forged or unauthorized instrument. We are satisfied that by presenting the check to Mr. Detty for his O. K., the prohibited act of uttering was complete. By this action defendant represented the check was good, and thus obtained from Detty that which was in effect an endorsement."

See, also, State v. Weaver, 149 Iowa 403, 128 N. W. 559, 31 L. R. A. (N.S.) 1046; Walker v. State, 127 Ga. 48, 56 S. E. 113, 8 L. R. A. (N.S.) 1175.

It seems clear to us that by offering the check to Mrs. Wrobel for the purpose of procuring her necessary approval defendant had gone far enough to consummate a violation of § 620.19.

Defendant also contends that the court instructed the jury that "uttering" under § 620.19 means presenting for payment and that, inasmuch as there was no objection to this instruction, it became the law of the case. Even assuming that there is validity to this argument, the offense may be completed by offering the check with intent to defraud as well as actually presenting it for payment. When it was offered to Mrs. Wrobel for her approval, a violation of the statute was completed, even though she had no capacity for actually cashing the check.

5. Defendant next contends that the evidence is insufficient to establish that the check presented for approval was forged.

The court's instruction as to this element of the crime was as follows:

"You are further charged that you must find that Ray G. Anderson is a fictitious person and that his name was placed on the check in

question by the defendant, or some other person acting with him, with the intent to defraud, or that Ray G. Anderson is a real person, and his name was placed on the check by the defendant, or some other person acting in concert with him, without authority, with intent to defraud."

This instruction goes further than is required by the statute. Inasmuch as no exception was taken to it, it probably became the law of the case, but even under the instruction, the evidence would permit an inference that these checks were forged. In Annotation, 49 A. L. R. (2d) 852, 856, we find the following:

"It is the settled rule that forgery may be committed by executing, or procuring to be executed, a written instrument in a fictitious or assumed name with intent to defraud, and this rule obtains even though the statute under which the prosecution is brought contains no specific provision as to the use of a fictitious or assumed name."

New York Cas. Co. v. Sazenski, 240 Minn. 202, 60 N. W. (2d) 368, is cited in the annotation as assuming this rule. In this case there is no direct proof that Roy or Ray Anderson is a fictitious person. However, the jury could infer as much from proof that a Mr. Bradford opened the account in the bank and signed the signature card and was the only one authorized to sign checks on the account but the checks were signed by Roy or Ray G. Anderson; defendant was identified as the person who, in the name of Anderson, retained phone service from Hoffman; and he cashed at least one other check bearing the name of Anderson and had two more in his possession. If there actually was a Roy or Ray Anderson, aside from defendant, it is clear that he had no authority to sign these checks. Whether Anderson was a fictitious person or a living one who signed without authority, in either event the checks would have been forged. Forgery, like most facts, may be proved by circumstantial evidence. The jury could find that defendant rented two rooms, which he never intended to occupy, for the purpose of establishing his identity, thereby inducing others to cash the checks. From all this evidence, an inference that the checks were forged and that defendant knew it was permissible.

6. Defendant carries this contention one step farther. He says that other checks found on his person or cashed by him cannot be used to establish this crime without first showing that they were forged. The rule is well established that other checks cashed at or about the same time as the one upon which the charge is based are admissible to show a common scheme or plan from which an inference may be drawn that defendant had knowledge that the checks were forged and that he had presented them with intent to defraud. The latest case to discuss this rule is State v. Polk, 263 Minn. 209, 116 N. W. (2d) 540.

7. It is true that in State v. Rose, 70 Minn. 403, 412, 73 N. W. 177, 179, we said:

"On the trial of a person charged with uttering, publishing and putting off as true a false or forged instrument, and for the purpose of bringing home to the defendant a knowledge of the false and forged character of the instrument there involved, and to fix upon him a criminal intent, other instruments found in his possession or passed by him about the same time may be introduced in evidence *upon proof that they are also false, forged and fraudulent.*" (Italics supplied.)

Defendant seizes upon the italicized portion of the above quotation to sustain his contention that it must first be shown that such checks are forged before they become admissible. However, an inference that the other checks were forged may also be based upon circumstantial evidence. It is not necessary that the state produce eyewitness as to the forgery of the checks that were cashed elsewhere before they become admissible. Where the evidence goes far enough to permit an inference that they actually were forged, they become admissible, and the jury may then infer that all of such checks, as well as the one upon which the charge was based, were forged.

8. Defendant next contends that his arrest was illegal, and as a result the instruments found by a search of his person at the time of such arrest were inadmissible.

The time of actual arrest is somewhat indefinite, but in any event it was prior to a search of his person. At the preliminary hearing Drassal testified that after telephoning the police department he had

told defendant that he was under arrest. Drassal was not then acting in his official capacity as a policeman. The relevant statutes are § 629.34, which provides in part:

"A peace officer may, without warrant, arrest a person:

\* \* \* \* \*

"(2) When the person arrested has committed a felony, although not in his presence;

"(3) When a felony has in fact been **committed, and he has** reasonable cause for believing the person arrested to have committed it; \* \* \*,"

and § 629.37, which provides in part:

"A private person may arrest another:

\* \* \* \* \*

"(2) When such a person has committed a felony, although not in his presence; or

"(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

An examination of the two statutory provisions with respect to the right of a peace officer and a private person to make an arrest where a felony has been committed shows that they are identical.

Inasmuch as we hold that the act of presenting the check for approval constituted a consummation of the crime, a felony had been committed before the arrest was made. It follows that either a peace officer or a private citizen could then make a legal arrest. All that was necessary was that a felony had been committed. As to arrest by a peace officer, see State v. Perra, 266 Minn. 545, 125 N. W. (2d) 44, certiorari denied, 377 U. S. 982, 84 S. Ct. 1889, 12 L. ed. (2d) 749. Where a felony has actually been committed, the same rules apply to an arrest by a private citizen under these statutes.

9. Inasmuch as the arrest was legal, the search following it was proper, and evidence found on defendant involving the crime for which he was arrested is admissible. In State v. Demry, 260 Minn.

173, 180, 109 N. W. (2d) 587, 592, where many of the authorities are collected, we said:

"* * * It is fairly well established that even though a person be arrested without warrant, evidence found in his possession or control, at the time of arrest, and taken from him or his possession without a search warrant is admissible if it is indicative of his guilt of the crime for which he had been placed under arrest."

The checks found on defendant's person in this case at the time of his arrest were relevant to establish his guilt and were therefore admissible.

10. The final contention of defendant is that the evidence adduced at the preliminary hearing was insufficient to warrant a bind-over to district court.

The state argues that the subsequent conviction of a defendant renders moot the insufficiency of evidence to justify a bind-over at a preliminary hearing, and also that, if that is not so, the evidence at the preliminary hearing was sufficient to justify a bind-over. Without deciding the first proposition, we think the second is tenable. The evidence at a preliminary hearing that will justify a bind-over need not be as convincing as that required to convict. All that is required at a preliminary hearing is sufficient evidence to establish probable cause; that is, that a crime has been committed and that defendant probably has committed it. State ex rel. Hastings v. Bailey, 263 Minn. 261, 116 N. W. (2d) 548; State ex rel. Jeffrey v. Tessmer, 211 Minn. 55, 300 N. W. 7; State ex rel. Krinkie v. Felix, 171 Minn. 140, 213 N. W. 556; In re Snell, 31 Minn. 110, 16 N. W. 692.[3]

The evidence presented at the preliminary hearing here consisted of checks found on defendant's person at the time of the arrest, the one he attempted to procure approval of, the identification card he had shown to Mrs. Wrobel, and the testimony of Detective Yost and Drassal. Their testimony was essentially the same as

---

[3]For a recent definition of probable cause that would justify issuance of a search warrant, see United States v. Ventresca, 380 U. S. 102, 85 S. Ct. 741, 13 L. ed. (2d) 684.

at the trial. The bank employee did not testify that the drawer's signature was unauthorized. Nor, for that matter, did the credit interviewer testify as to actual presentment.

The evidence at the preliminary hearing did show that defendant wrote his real name as Merle L. Clark on a piece of paper, yet he was using the name Warren Bromberg as the payee of the check in seeking to procure an approval of it. While the evidence at the preliminary hearing might have been more conclusive, it is sufficient to establish that a felony had probably been committed when defendant presented the check for approval and that the check in fact was a forgery. The evidence was conclusive that defendant attempted to procure approval on the check, so as far as showing probable cause that defendant had committed the crime, if one had been committed, there is no deficiency in the proof. We think the evidence at the preliminary hearing was sufficient to justify the magistrate in binding defendant over to the district court for trial.

Affirmed.