419 P.2d 403

**STATE of Arizona, Appellee,**
v.
**Daun S. SINGH, Appellant.**
**I CA–CR 76.**
Court of Appeals of Arizona.
Oct. 26, 1966.

Rehearing Denied Nov. 29, 1966.
Review Denied Dec. 28, 1966.

274

Darrell F. Smith, Atty. Gen., by Philip W. Marquardt, Asst. Atty. Gen., for appellee.

Johnson & Shaw, by Joseph P. Shaw and Marvin Johnson, Phoenix, for appellant.

CAMERON, Judge.

This is an appeal from verdicts and judgments of guilt to an information charging two counts of forgery (§ 13–421 A.R.S.).

We are called upon to determine:

(1) whether the presenting of a document to a notary public for acknowledgement of a forged signature is "passing", "publishing" or "uttering" within the meaning of the Arizona forgery statute (13–421 A. R.S.),

(2) whether the defendant was materially prejudiced by the granting of the motion of the County Attorney made at the close of the evidence to amend Count II of the information to allege a different recipient of the forged document than the recipient named in the information as previously filed, and

(3) whether the defendant was materially prejudiced by the endorsing upon the information of thirty-five additional witnesses five days prior to defendant's trial.

The facts necessary for a determination of this matter are as follows: An information was filed 29 July, 1965, in the Superior Court of Maricopa County accusing the defendant of the crime of forgery in two counts reading as follows:

"That the said DAUN S. SINGH on or about the 14th day of April, 1965,. * *

did then and there with intent to defraud, pass or utter or publish as true and genuine to LUCILLE SULLIVAN, an instrument, to wit: a warranty deed, dated April 14th, 1965, the said LUCILLE SULLIVAN being then and there an employee of the Valley National Bank, Mesa Branch; warranty deed naming ALFRED H. NICHOLS, as grantor and WILLIAM MILES, SR., as grantee, purportedly signed by ALFRED H. NICHOLS, he, the said DAUN S. SINGH, then and there well knowing the same purported signature of ALFRED H. NICHOLS to be a forgery, all contrary to the provisions of Section 13–421 A.R.S., 1965. * * * "

And Count II:

"That the said DAUN S. SINGH on or about the 16th day of April, 1965, * * did then and there with intent to defraud, pass or utter or publish as true and genuine to DWAYNE MOORE, to wit: a supplemental escrow instruction purportedly signed by ALFRED H. NICHOLS, the said defendant then and there well knowing the same purported signature of ALFRED H. NICHOLS to be a forgery, all contrary to provisions of Section 13–421 A.R.S., 1965."

Endorsed upon this information pursuant to Rule 153, Rules of Criminal Procedure, 17 A.R.S., were the names of three witnesses. On 10 August, 1965, the defendant entered a plea of not guilty as to both counts, and did not waive the 60 day trial period as provided in Rule 236, Rules of Criminal Procedure, 17 A.R.S. The matter was set for trial to commence 14 September, 1965, and on 8 September, 1965, the County Attorney endorsed upon the information the names of thirteen additional people as witnesses. On 9 September, 1965, twenty-five more names were endorsed upon the information as witnesses. Trial commenced 14 September, 1965, and the defendant timely objected to the calling of the witnesses whose names had been thus endorsed. The defendant did not request a continuance for the purpose of interrogating said witnesses.

The testimony adduced at the trial indicates that in March of 1965, Mr. Dwayne Moore, a Phoenix real estate salesman, met with the defendant at the defendant's request to discuss the sale of some farm land owned by Alfred H. Nichols. The defendant purported to represent Mr. Nichols and to be his partner. He told Moore that Nichols owed him $80,000 as damages arising out of the partnership, and that Nichols had agreed to pay the defendant out of the proceeds of the sale of the Nichols property. Moore procured a prospective buyer who, after negotiations, agreed to pay $144,000 for the property. During the negotiations the defendant handled all matters for his alleged principal. All necessary papers and documents to effectuate the sale were delivered to Phoenix Title and Trust Company as the escrow agent, and the alleged sale was completed. The purchaser deposited the sums necessary into the escrow, and a supplemental escrow instruction was also delivered to Phoenix Title and Trust which read as follows:

"Escrow Number 05000870–2. This is to instruct you to release to Daun S. Singh, 7532 East Portland Avenue, Scottsdale, Arizona, the amount of $84,000 out of the above numbered escrow.
/s/ Alfred H. Nichols"

A check in the amount of $84,000 drawn on the escrow account of Phoenix Title and Trust Company was made out to Daun S. Singh and delivered to him. The check in evidence shows that it was endorsed "Daun S. Singh". At the trial, defendant, through his attorney, stipulated the signatures of Alfred H. Nichols on the escrow papers, instruction and deed were forgeries and in fact tracings. Defendant, through his attorney, denied that he did the tracing. Defendant's attorney also admitted:

"We admit the defendant got that check, cashed that check, got that money."

Although the testimony of the notary public leaves much to be desired in regard to identifying the deed notarized by her, for example:

"I show you State's Exhibit 7 [warranty deed] in evidence. Will you please look at that and tell us if that is your signature and if you notarized that?

"Answer: Yes, that is my signature.

"Question: Is that the signature you notarized?

"Answer: I don't recall that as such, but this is my signature so it must be."

Still the evidence is sufficient from which the jury could find that the defendant, Singh, presented to the notary public a deed upon which the signature of the grantor had been forged, that in response to this request the notary public notarized the signature and returned the deed to Mr. Singh.

Count II of the information charged the defendant with presenting or uttering a forged supplemental escrow instruction to Dwayne Moore, the real estate agent, knowing that the signature of Alfred H. Nichols thereupon was forged. During the trial it developed from the testimony that Moore was out of town during the time this supplemental escrow instruction was delivered to a Mr. Frank Donaldson, an escrow officer for Phoenix Title and Trust Company. Defendant's attorney had, during the trial, objected to the testimony of any transaction between Singh and Donaldson. After the State had rested, the County Attorney moved, pursuant to Rule 145 of the Arizona Rules of Criminal Procedure, 17 A.R. S., to amend the information into the following particulars:

"As to Count II of the information in this trial before the court we would amend it and move the court to amend it, deleting the name of DWAYNE MOORE and inserting the name of FRANK DONALDSON in view of the testimony that has been elicited during the trial. That, in fact, this date, said described instrument was uttered to FRANK DONALDSON rather than to DWAYNE MOORE." (Page 517, T.R.)

The court granted the County Attorney's motion to amend and the matter was then

submitted to the jury. A guilty verdict was returned both as to Count I and Count II.

## COUNT I

 We will first concern ourselves with the question raised by the defendant that giving a document to a notary public for the purpose of notarizing a forged signature does not constitute an uttering within the meaning of the statute. For the purpose of this case, the statute may be read as follows:

"A. A person is guilty of forgery who, with intent to defraud:

"1. Signs the name of another person, or of a fictitious person, knowing that he has no authority so to do, or falsely makes, alters, forges or counterfeits any charter, letters patent, deed, lease * * or utters, publishes, passes, or attempts to pass, as true and genuine any of the false, altered, forged or counterfeited matter described above, knowing it to be false, altered, forged or counterfeited with intent to prejudice, damage or defraud any person * * *." § 13–421 A.R.S.

It would appear from this statute that we are concerned with two separate and distinct crimes within the one statute. One is the actual forging of the instrument itself with intent to defraud. The other offense would be the publishing, uttering, passing or attempting to pass the forged instrument knowing it to be so, and with intent to prejudice or defraud any person. State v. Martin, 2 Ariz.App. 510, 410 P.2d 132 (1966). In the case before this Court, the instruments were admittedly forged, and from the fact situation we are not concerned with who did the actual forging or tracing of the names upon the instruments. We are concerned with the question of uttering, publishing, passing or attempting to pass the forged documents. Uttering has been defined as follows:

"To utter and publish a forged instrument is to offer to pass it to another with intent to prejudice, damage, or defraud, declaring or asserting directly or in-

directly by words or actions that it is good." Crawford v. State, 164 Neb. 231, 82 N.W.2d 1 (1957)

"Uttering" is a term of art used to distinguish the actual forgery from the passing or publishing, and as used in the law of forgery is synonymous with publishing:

The words "utter" or "publish", as used in the law of forgery, are synonymous, and they mean to make any use, or to attempt any use of an instrument, document or writing, whereby or in connection with which a person asserts or represents to another, directly or indirectly, expressly or impliedly, by words or conduct, that the instrument, document or writing is genuine. People v. Larue, 28 Cal.App.2d 748, 83 P.2d 725, 728.

Both from the statute and from the definitions above, it is apparent that to be convicted of the crime of forgery, the State need not prove that anyone has been injured. The statute is clear that the uttering or passing of an instrument with intent to prejudice or defraud (any person) is a crime whether or not the person to whom the instrument is uttered is damaged or harmed in any way. Our Supreme Court has stated:

"Appellant erroneously claims the state was required to show that the checks passed were not honored. The crime of forgery is complete when one either makes or passes a false instrument with intent to defraud (citations omitted). It is immaterial to the offense of forgery whether any person has been actually injured. The injury is not whether anyone has been actually injured, but whether anyone might have been prejudiced." State v. Maxwell, 95 Ariz. 396, 399, 391 P.2d 560, 562 (1964).

For example, the recording of the deed with a forged signature knowing it to be such, with intent to defraud, does not harm the person in the Recorder's Office who does the recording, but it can harm other people and the act of recording would be a crime under our forgery statute, § 13–421 A.R.S.

We have found no case law in Arizona concerning the question of presenting an instrument to a notary public for the purpose of acknowledging a forged signature. Although the text writers construing the California cases under a similar statute have stated:

"Delivery of a forged instrument to a notary public for acknowledgment or the like, constitutes 'utterance'." 22 Cal. Jur.2d, Section 15, page 547.

We are not convinced that the cases cited for this proposition, Ex Parte Driggs, 10 Cal.App. 445, 102 P. 542 (1909) as well as a later Driggs case, People v. Driggs, 12 Cal.App. 240, 108 P. 62 (1910), appeal denied 108 P. 64 (1910), support this proposition. A recent Minnesota Supreme Court case, however, held that where it is necessary to procure an approval of a check from a person authorized to grant such approval before it can be cashed, a presentment of the forged check for such approval to that person constitutes a violation of the Minnesota forgery statute, State v. Clark, 270 Minn. 538, 134 N.W.2d 857 (1965), and we agree with this analysis. In the instant case, before the defendant could record this deed or deliver it to the escrow agent for eventual recording, the signature of Alfred Nichols had to be acknowledged by a notary public. We feel and therefore hold that presenting a deed upon which there is a forged signature to be acknowledged by a notary public, knowing at the time the deed is presented that the signature is in fact forged and with an intent to defrand *any* person, constitutes an "uttering" within the Arizona forgery statute (§ 13–421 A.R.S.).

## COUNT II

We are next concerned with the amendment to Count II made by the County Attorney at the close of the State's case. The original information, Count II, charged the defendant with passing or uttering to Dwayne Moore, a supplemental escrow instruction. Mr. Dwayne Moore was a real estate agent. At the end of the State's case,

the County Attorney moved to substitute the name of Mr. Frank Donaldson in the information as the person who received the forged instrument. This motion was made pursuant to Rule 145, Rules of Criminal Procedure, 17 A.R.S. Rule 145 reads as follows:

"B. No variance between the allegations of an indictment, information or bill of particulars, which state the particulars of the offense charged, whether amended or not, and the evidence offered in support thereof shall be grounds for the acquittal of the defendant. The court may at any time cause the indictment, information or bill of particulars to be amended in respect to any such variance to conform to the evidence."

"D. No motion made after verdict based on any such defect, imperfection, omission or variance shall be sustained unless it is affirmatively shown that the defendant was in fact prejudiced thereby in his defense upon the merits." Rule 145, Rules of Criminal Procedure, 17 A.R.S.

It is the contention of the defendant that he was prejudiced thereby, and with this contention we have to agree. Rule 145, Rules of Criminal Procedure, 17 A.R.S., was designed to prevent the over-technical ruling found in Martinez v. Territory, 5 Ariz. 55, 44 P. 1089 (1896). In that case, the court found a fatal variance in that the information charged theft of a steer and it was proven that a cow was stolen instead. But while the rule will allow an amendment to be made *to* the information (which does not change the nature of the offense) it does not allow an amended information to be substituted to charge defendant with a different crime.

A defendant is entitled to be charged with a specific offense in order that he may know the nature and extent of the accusation against him. One way of testing herein whether the defendant has been prejudiced by the amendment is to ask whether or not upon an acquittal of the charge of passing a forged document to Dwayne Moore, the defendant could then

be charged with forgery in relation to passing a forged document to Frank Donaldson. If there has been no jeopardy as to a charge of passing a forged document to Frank Donaldson, then we are dealing with two separate offenses, and the court may not grant the County Attorney's motion to change the nature of the charge against the defendant by allowing an amendment to the information. It is apparent in the instant case, that we have two separate and distinct crimes involved. One would be the passing or uttering of forged instruments to Dwayne Moore. The other would be the passing of forged instruments (even though they may be the same instruments) to Frank Donaldson. Under these circumstances, defendant was materially prejudiced by the amendment, and the judgment must be reversed as to Count II.

## THE ENDORSEMENT OF ADDITIONAL WITNESSES

■ The appellant next contends that the trial court erred in allowing the State to endorse an additional thirty-five names upon the information five days prior to trial. Rule 153, Rules of Criminal Procedure, 17 A.R.S., reads as follows:

> "When an indictment or information is filed, the names of all the witnesses or deponents on whose evidence the indictment or information was based shall, be endorsed thereon before it is presented, and the county attorney shall endorse on the indictment or information, at such time as the court may by rule or otherwise prescribe, the names of other witnesses he proposes to call. A failure to so endorse the names thereon shall not affect the validity or sufficiency of the indictment or information, but the court in which the indictment or information was filed shall, upon application of the defendant, direct the names of such witnesses to be endorsed thereon. No continuance shall be allowed because of the failure to endorse such names thereon unless such application was made at the earliest opportunity and then only as

a continuance is necessary in the interest of justice."

Article 2, Section 24 of the Arizona Constitution, A.R.S., reads as follows:

> "Section 24. In criminal prosecutions, the accused shall have the right to appear and defend in person, and by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed, and the right to appeal in all cases * * *."

Counsel for the defendant objected at the opening of the trial to the calling of any of the thirty-five witnesses so endorsed. He pointed out to the court that the information was filed on the 29th day of July, 1965, that the sixty day trial period was fast running out, and that the defendant was being held in jail in lieu of a $30,000 bond which he was unable to make. The defendant specifically did not ask for a continuance or delay as Rule 153 specifies. The question before this Court then is whether the defendant in order to have the right to an adequate defense in a criminal prosecution must be compelled to ask for a continuance and therefore waive his right to a speedy public trial. For the purposes of considering this matter, it is immaterial that the County Attorney represented to the court that they did not intend to call more than twelve of the additional thirty-five witnesses endorsed (five of the additional witnesses were actually called). It is just as prejudicial to an adequate preparation for trial by defendant's attorneys, that they are faced with thirty-five additional names endorsed on the information, twenty-three of whom the County Attorney does not intend to call as witnesses, as it would be if the County Attorney intended to call all thirty-five. In each case, in order to prepare an adequate defense, counsel must

investigate and possibly interview to ascertain what testimony each of the thirty-five additional witnesses might give if called by the State during the trial. In this regard it should also be noted that none of the thirty-five additional names contained any address or other information regarding them or their testimony. While admittedly our rules do not require this to be done, the lack of this information places an additional burden on the defendant and his attorney in preparing for trial.

Our Supreme Court has discussed this rule in two recent cases:

"Rule 153, Rules of Criminal Procedure, 17 A.R.S., requires the endorsement of names of the State's witnesses on the information. Rule XIII (e) of the Rules of the Superior Court of Maricopa County, 17 A.R.S., require this to be done at least five days before the date of trial, however, it further provides that other names may be added if such witnesses are discovered with due diligence prior to the date of trial. Discretion is vested in the Court in this regard. We have recently held that the failure to comply with Rule 153 does not in and of itself disqualify one whose name is not so endorsed from being called as a witness. (citations omitted) This is a matter lying within the sound discretion of the trial court." State v. Sherrick, 98 Ariz. 46, 60, 402 P.2d 1, 11 (1965).

And:

"Rule 153 also provides, 'No continuance shall be allowed because of the failure to endorse such names thereon unless such application is made at the earliest opportunity and then only if the continuance is necessary in the interest of justice.' We have held that a continuance should not be allowed a defendant unless application is made at the earliest opportunity and then only if the continuation is necessary in the interest of justice. State v. Cassady, 67 Ariz. 48, 190 P.2d 501. It has likewise been held that any legal right which the defendant had

to challenge the propriety of the testimony of such a witness [is] waived by a defendant when no continuance was requested." State v. Lovell, 97 Ariz. 269, 273, 399 P.2d 674, 676 (1965).

In the instant case, it should be noted that the County Attorney originally endorsed only three witnesses upon the information and that the thirty-five additional names were endorsed on the 8th and 9th of September prior to a 14 September trial date. It is also important to note, as defense counsel pointed out, that in order to adequately prepare for a defense in the instant case, to meet the testimony of the thirty-five additional witnesses, a continuance would have been necessary which would, in effect, waive the sixty day requirement for trial. We do not believe that Rule 153 or the recent decisions of our Supreme Court apply to a situation, as here, where in order to avail himself of an adequately prepared defense the defendant, incarcerated in the County Jail and unable to make bond, would be forced to waive his rights to a speedy trial. For that reason, and limited only to a situation as here, we hold that to allow the endorsement of all of the thirty-five witnesses, five days prior to trial, violates defendant's rights of assistance to counsel and of a speedy public trial as provided in Article 2, Section 24 of the Constitution of the State of Arizona, as well as applicable provisions of the United States Constitution.

For the reasons stated herein, the matter is reversed as to Count II, the matter is reversed and remanded for new trial as to Count I.

J. THOMAS BROOKS, Superior Court Judge, concurs.

STEVENS, Chief Judge (specially concurring).

Larue cited by the majority holds that "uttering" and "publishing" are synonymous. To my mind to utter is to pass and to publish is to declare or to represent. In my opinion, a person may publish a deed

**280**

and still retain complete physical control thereof, as for example, he could exhibit the forged deed to another representing the same to be a valid deed and thereby induce the other to part with funds on the strength of this representation or publication. In the case we have under consideration the State's evidence indicated that the defendant retained control of the deed when he surrendered temporary physical possession to the notary public much as a person would retain control if he delivered a document to an agent for safekeeping. On the other hand, to further the fraudulent scheme and to complete the appearance of authenticity, he needed the signature and seal of a notary. To accomplish this end he declared to her, he represented to her, he "published" to her that the signature thereon was true and genuine. In fact he practiced a fraud upon her. While it is true that financial injury to a person to whom a deed is published need not be proven, in the situation which we have under consideration the defendant did participate in creating a potential liability on the part of the notary arising out of her act of notarization.

The statute is in the disjunctive. This slight disagreement with the majority and the respectable authority cited by the majority does not in any way affect the soundness of the majority opinion. I concur in the majority opinion subject only to my expression relative to the above distinction.

NOTE: Judge FRANCIS J. DONOFRIO having requested that he be relieved from consideration of this matter, Judge J. THOMAS BROOKS was called to sit in his stead and participate in the determination of this decision.